WILLIAM SUMMERS *et al.*

*v.*

HIBBARD, SPENCER, BARTLETT & CO.

*Filed at Ottawa October 29, 1894.*

1. CONTRACT—*of purchase, by letter—when absolute.* An unqualified offer in a letter to purchase goods, and an unqualified acceptance in the reply, form an unconditional, binding·contract.

2. SAME—*printed matter in heading of letter not regarded.* Printed matter in a letter-head forms no part of the letter written on the sheet, and will not qualify an absolute contract which results from an acceptance of an offer by such letter.

3. SAME—*written part governs printed part.* If an agreement is partly written and partly printed, preference is given, in case of repugnancy, to the writing; *a fortiori*, where the printed matter is in the heading, where it is not likely to be noticed.

4. SAME —*inevitable accident will not excuse performance.* If one, by a positive undertaking, creates a duty or imposes a charge upon himself, he becomes an insurer, and must make the promise good, either by performance or payment of damages, and inevitable accident will not excuse him.

5. SAME—*breakage of mill will not excuse delivery.* If a party contracts, unconditionally, to sell and deliver, at a specified time, goods

to be made in his mill, the breakage of his mill will not excuse performance or bar a suit for damages.

6. The rule that if performance depends on the continued existence of some person, animal or thing, the perishing thereof will excuse performance, has, in such case, no application.

7. MEASURE OF DAMAGES—*when time of delivery is postponed.* If delivery of goods due under a contract is postponed by agreement, the measure of damages, in case of non-delivery, is the difference between the contract and the market price at the time fixed by the contract to postpone.

8. SAME—*indefinite postponement—demand.* If the time of delivery is, by agreement, postponed indefinitely, the damage is measured by such difference in prices existing at a reasonable time after the buyer demands performance.

9. SAME—*vendee need not go into the market and purchase.* The vendee, being entitled to the benefit of his contract, may charge the delinquent seller with the difference in prices without actually purchasing the goods elsewhere.

10. EVIDENCE—*statements of agent must be part of res gestæ.* Statements made by an agent are only admissible in evidence when they are part of the *res gestæ,* made *dum fervet opus.*

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Summers Bros. & Co., appellants, were manufacturers of sheet-iron at Struthers, Ohio, and Hibbard, Spencer, Bartlett & Co., appellees, were jobbers in shelf hardware and light iron at Chicago. On March 1, 1889, appellees mailed to appellants a letter which was as follows:

"*Summers Bros. & Co., Struthers, Ohio:*

"GENTLEMEN—We are thinking of buying 5000 to 10,000 bundles common sheet-iron, for delivery, in equal quantities, in the months of April, May, June, July and August, and would be pleased to have your best price on same. We shall want all numbers from 16 to 27, but at least three-fourths of the lot 26 and 27. Hoping to hear from you soon with a low price, yours truly,

HIBBARD, SPENCER, BARTLETT & CO."

Appellants answered said letter as follows :

*"All sales subject to strikes and accidents.*
        SUMMERS BROS. & CO.,
            MANUFACTURERS OF                STRUTHERS, OHIO,
    BOX-ANNEALED COMMON AND REFINED            *March 4, 1889.*
                SHEET IRON.

*"To Hibbard, Spencer, B. & Co., Chicago :*

"Your favor of March 1 at hand. We make you the following offer : 1000 bdls. in March ; 1000 bdls. in April ; 1000 bdls. in May; 1000 bdls. in June ; 500 bdls. in July; 500 bdls. in August.—5000 bdls.

"March and April iron as follows : No. 27, 24x101, at $2.80, deld. Chicago; 26, 24x101, at $2.70, deld. Chicago ; 16, 18x20, at $2.60, deld. Chicago.

"May, June, July and August iron : No. 27, 24x101, at $2.85, deld. Chicago ; 26, 24x101, at $2.75, deld. Chicago ; 16, 18x20, at $2.65, deld. Chicago.

"All 60 days, or 2% ten days from date of invoice.

            "Yours resp'y,        SUMMERS BROS. & CO."

On March 9 appellees replied, under a like letter-head as that in their first letter, as follows :

*"Summers Bros. & Co., Struthers, Ohio :*

"GENTLEMEN—Your favor 4th is at hand. If you are willing to revise your ideas a little we can trade with you. You may enter our order for 5000 bdls. first-class com. sheet-iron, as follows : 500 bdls. March delivery; 500 bdls. April delivery; 1000 bdls. May delivery; 1000 bdls. June delivery; 1000 bdls. July delivery; 1000 bdls. August delivery. Prices to be : Nos. 22 and 24, $2.60 ; 25 and 26, $2.70 ; 27, $2.80. Chicago delivery, 60 days, or two per cent cash in ten days.

"If you accept our offer you may enter us for March shipment 250 bdls. 26, 24x101 in., and 250 bdls. 27, 24x101 in.

"Awaiting your prompt reply, we are, very truly yours,
            HIBBARD, SPENCER, BARTLETT & CO."

On March 11 appellants mailed to appellees an acceptance of their offer, as follows :

*"All sales subject to strikes and accidents.*

SUMMERS BROS. & CO.,
MANUFACTURERS OF                    STRUTHERS, OHIO,
BOX-ANNEALED COMMON AND REFINED          *March 11, 1889.*
SHEET IRON.

*"To Hibbard, Spencer, B. & Co.*, *Chicago :*

"Mr. CHARLES : Dear Sir—Your favor of March 9 at hand.   We accept your offer, 5000 bdls. iron, 500 March, 500 April, 1000 May, 1000 June, 1000 July, 1000 August. Prices, No. 27 at $2.80 ; 26 at $2.70 ; 24 at $2.60. F. O. B. cars, Chicago, 2% ten days from date of invoice. We also enter your order, 250 bdls. 26x101 and 250 bdls. 27x101, Mch. shipment.        Resp'y yours,

SUMMERS BROS. & Co."

In the latter part of March and early part of April, 1889, there was further correspondence between the parties, which resulted in an addition to the original contract of 3000 bundles of like sheet-iron, at same figures, for July, August and September delivery.

Appellants delivered only 1847 bundles of sheet-iron under the first or original contract.   They made no deliveries whatever under the second or additional contract. As an excuse for not making further deliveries, they, on July 24, 1889, represented to appellees that the contracts were made "subject to strikes and accidents," and that they were prevented from filling the contracts in time by reason of breakages in their mills,—and they still make, on this appeal, the same claims.

There was a deficit in the May delivery of 727 bundles, in the June delivery of 639 bundles, and in the July delivery of 787 bundles.   July 20 was the date of the last delivery.  Appellees bought on the market, of other parties, on August 3, 1889, 1000 bundles of sheet-iron, on August 6, 2000 bundles, on August 19, 1500 bundles, and on August 24, 1000 bundles.  These purchases were made

in order to get iron to take the place of that which appellants had contracted to sell them. During the whole of September and into October the market price of sheet-iron kept up, being at no time lower than the prices paid in the latter part of August. The total of the sheet-iron delivered by appellants, added to that bought by appellees in the market, was 700 bundles less than the amount that appellants had contracted to deliver.

This suit was brought by appellees to recover from appellants the amount that they paid for the sheet-iron in excess of the contract price. They made no claim in respect to the 700 bundles. The amount of the excess, less deductions for unpaid shipments, was $1546.61. The court instructed the jury to find in favor of appellees for that amount. From the final judgment rendered in the trial court there was an appeal to the Appellate Court, where that judgment was affirmed. The present appeal is from such judgment of affirmance.

Mr. LEROY D. THOMAN, for the appellants :

The printed as well as the written parts of the letters must be considered to determine what the contract is. Jones on Contracts, secs. 215-217; *Robinson Bros.* v. *Transportation Co.* 45 Iowa, 470.

If, in the nature of the contract, there is an implied condition by which either party will be relieved from the unqualified obligation, and when, in such case, without fault, performance is rendered impossible, it may be excused. *Dexter* v. *Norton,* 47 N. Y. 62; *Stewart* v. *Stone,* 14 L. R. A. 215.

Where delivery is required to be made by installments, the measure of damages will be estimated by the value at the time each delivery should be made. 1 Sedgwick on Damages, 558; *Furnace Co.* v. *Cochran,* 8 Fed. Rep. 463; *Chipman* v. *Hill,* 59 Wis. 211; *Johnson* v. *Allen,* 78 Ala. 387; *Smith* v. *Dunlap,* 12 Ill. 184; *Phelps* v. *McGee,* 18 id. 155; *Sleuter* v. *Wallbaum,* 45 id. 43; *Saladin* v. *Mitchell,* 45 id. 79; *Deere*

v. *Lewis*, 51 id. 264; *Kitzinger* v. *Sanborn*, 70 id. 146 ; *Trunkey* v. *Hedstrom*, 131 id. 204.

A court is not justified in directing a verdict in favor of either party, unless upon an undisputed state of facts, and where a contrary verdict could not stand. *Houck* v. *Gue*, 30 Neb. 113 ; *Railroad Co.* v. *Barnard*, 32 id. 306.

The printed as well as the written parts of a contract must be considered, and if there is no inconsistency between the two, all that is contained in it will be considered in determining what the parties intended. *Robinson Bros.* v. *Transportation Co.* 45 Iowa, 470.

Messrs. HAMLINE, SCOTT & LORD, for the appellees :

For rule of evidence as to letters, see *Brandt* v. *Gallup*, 111 Ill. 487; *Flower* v. *Brumbach*, 30 Ill. App. 297.

For rules as to printed forms, see *Express Co.* v. *Pinckney*, 29 Ill. 410 ; *People* v. *Delaney*, 96 id. 503.

For rule as to bills of lading, warehouse receipts, etc., see *Transit Co.* v. *Thielbar*, 86 Ill. 73 ; *Transit Co.* v. *Hosking*, 19 Ill. App. 610.

The performance of the contract was not rendered impossible by any act of God or the public enemy, and save in such cases there are no implied conditions in any contract which excuse its non-performance. *Steele* v. *Buck*, 61 Ill. 343 ; *Bunn* v. *Prather*, 21 id. 218 ; *Dehler* v. *Weld*, 50 id. 491.

Appellees were entitled to the damages allowed, and could have claimed much more. 1 Sedgwick on Damages, (7th ed.) 557; *Follansbee* v. *Adams*, 86 Ill. 15.

There was no competent evidence in the case which entitled appellants to a verdict, and the court was justified in taking the case from the jury. *McCormick* v. *Huse*, 66 Ill. 315 ; 1 Greenleaf on Evidence, (13th ed.) 321; *Mason* v. *Park*, 3 Scam. 535 ; *Jamieson* v. *Conway*, 5 Gilm. 227 ; *Bigelow* v. *Collamore*, 5 Cush. 226 ; *Sanford* v. *Rawlings*, 43 Ill. 92 ; *Sigsworth* v. *McIntyre*, 18 id. 126 ; Abbott on Trial Evidence, 526.

As to usage, see *Coffman* v. *Campbell,* 87 Ill. 95 ; *Bissell* v. *Ryan,* 23 id. 566 ; *Bank* v. *Birney,* 28 id. 90 ; *Railway Co.* v. *Richards,* 126 id. 456 ; *Gilbert & Co.* v. *McGinnis,* 114 id. 32 ; *Deshler* v. *Beers,* 32 id. 381.

Mr. JUSTICE BAKER delivered the opinion of the court :

It is insisted by appellants that the words, "All sales subject to strikes and accidents," printed at the top of their letter-heads, must be considered in determining what the contract was, and that said words constituted an express condition that became a part of the contract between them and appellees. We do not so understand the case. Under date of March 1, 1889, appellees invited appellants to make them an offer of sale of a specified quantity of sheet-iron, to be delivered in certain designated months. On March 4 appellants made them an offer, as requested. On March 9, in their letter of that date, appellees declined to accept the offer received, and at the same time they submitted for consideration an offer of their own,—an offer of purchase. This offer contained all the elements and terms of a precise and complete contract, and lacked only the assent thereto of the persons to whom it was addressed to make it such a contract. The offer was to buy a certain quantity of sheet-iron, of certain sizes, to be delivered in Chicago in specified quantities and at designated times, and to pay therefor certain prices at certain stated times, and appellees concluded their proposal by saying, "If you accept our offer you may enter us for March shipment 250 bundles," etc. The offer was absolute and positive, and without any conditions, qualifications or exceptions whatever. On March 11, appellants wrote to appellees : "Your favor of March 9 at hand. We accept your offer." And they thereupon proceeded to restate in their letter the terms of the proposal made to them. These two letters made the contract between the parties. The two preceding letters seem to us to be wholly immaterial. The mere fact that appel-

lants wrote their acceptance on a blank form for letters, at the top of which were printed the words, "All sales subject to strikes and accidents," no more made those words a part of the contract than they made the other words there printed, "Summers Bros. & Co., Manufacturers of Box-annealed Common and Refined Sheet-Iron," a part of the contract. The offer was absolute. The written acceptance which they themselves wrote was just as absolute. The printed words were not in the body of the letter or referred to therein. The fact that they were printed at the head of their letter-heads would not have the effect of preventing appellants from entering into an unconditional contract of sale.

In *American Express Co.* v. *Pinckney*, 29 Ill. 392, this court said: "In a case where the agreement is partly written and in part printed, the preference is always given to the written part." In that case the printed matter was in the body of the instrument, incorporated and mingled with the written matter. It would seem there is more reason and occasion for applying the principle of law there invoked in a case where, as here, the words in print are separate and apart from the writing that appears upon the paper, and in a place where one would not be likely to look for limitations upon that which is written. *People ex rel.* v. *Dulaney*, 96 Ill. 503, is to the same effect as the case above cited.

When an instrument is in part written and in part printed, and these parts are apparently inconsistent, or there is a reasonable doubt upon the sense and meaning of the whole, the words in writing will control, because they are the immediate language and terms selected by the parties themselves for the expression of their meaning. (*Alsagu* v. *St. Katherine's Dock Co.* 14 M. & W. 796, and *Robertson & Thomasson* v. *French*, 4 East, 360, both cases cited with approval in *Express Co. case, supra.*) In the case at bar it is inconsistent that the contract should be both an absolute contract and a conditional contract. The terms

of payment in this contract were sixty days' time or two per cent discount for cash in ten days.. Suppose the words, "All sales not paid for on delivery to draw interest," had been printed on the letter-head; can there be any doubt that the written terms would have controlled the printed words? Here there was a written provision that the iron was to be delivered free on board the cars at Chicago. Suppose it had been printed on the letter-head that the manufacturers would not be responsible for iron after a delivery to a common carrier; would not the written provision have governed the contract?

Upon the whole, we are inclined to the opinion that the mere fact that the words in question were printed in the caption of the paper on which appellants wrote their unqualified acceptance of the contract proposed by appellees, did not have the effect of reading them into the agreement thereby consummated; and appellants understood that some sort of an agreement was brought to a completion by their act, for in their letter they wrote : "We also enter your order for 250 bundles, etc., March shipment."

Appellants make a further claim that there was an implied condition in the contract, that would relieve them from performance if their mill plant, without any fault on their part, was so disabled as to make it impossible for them to make the iron that they contracted to deliver. The contract did not call for iron manufactured at their mill. It simply called for first-class common sheet-iron of certain specified sizes. There was nothing to prevent their filling the contract by going into the market and buying sheet-iron manufactured at other mills. Appellees seem to have experienced no difficulty, other than that of being forced to pay a higher price, when they went on the market and bought from other parties the sheet-iron contracted for which appellants failed to supply. But even if the contract had been for sheet-iron of their own manufacture, the breakages in this mill would not have relieved them from liability. The general doctrine

is, that where parties, by their own contract and positive
undertaking, create a duty or charge upon themselves,
they must abide by the contract and make the promise
good, and either do the act or pay the damages. (*Steele* v.
*Buck*, 61 Ill. 343 ; *Dehler* v. *Held*, 50 id. 491; *Bunn* v. *Prather*,
21 id. 217.) Inevitable accident affords them no relief, for
they are regarded as insurers to the extent of making
good the loss.   There is a principle of the law that, in
contracts in which the performance depends on the con-
tinued existence of a given or specified person or animal
or thing, a condition is implied that the impossibility of
performance arising from the perishing of the person,
animal or thing shall excuse the performance.   But there
is no place in this case for the application of that rule.

There is no doubt of the correctness of the rule stated
by appellants, that where delivery is required to be made
by installments, the measure of damages will be esti-
mated by the value at the time each delivery should be
made.   In the case at bar, appellees made threats to buy
in at seller's expense, but excuses rendered and promises
made by appellants of frequent and large shipments de-
terred them from doing so.   If delivery is postponed by
agreement between the parties, the measure of damages
is the difference between the contract price and the mar-
ket price at the time the article is deliverable by the
subsequent agreement, and where the time of delivery is
postponed indefinitely, the measure of damages is the
difference between .the contract price and the market
value at a reasonable time after demanding performance.
Appellees admit that they had no legal right to buy in,
during the month of August, more than 3159 bundles of
sheet-iron, that being the quantity then due, under the
original and additional contracts, on August 1.   But the
uncontroverted evidence is, that the price of such iron
remained firm during September and a part of October,
being at no time lower than August prices.   So the pre-
mature purchases worked appellants no injury, but were

to their benefit. Besides this, it was held in *Follansbee* v. *Adams*, 86 Ill. 13, that the vendee may charge the vendor with the difference in prices without making any purchases, the result being the same, and the vendee being entitled to the benefit of his contract.

It is urged that the trial court committed error, in that it refused to allow to go to the jury testimony tending to prove that in June, 1889, one Charles, purchasing agent of appellees, made certain admissions to one of the appellants. There was no error in this action of the court. The admission of such testimony would have been in violation of the rule that the terms of a written contract cannot be varied by parol evidence, and also in violation of another rule, that the statements of an agent are admissible only when they are part of the *res gestæ*, and are made *dum fervet opus*.

The making of the written contracts being admitted at the trial, the court having construed them and held that the printed line in the caption of the letters was no part of such contracts, and having resolved, as matter of law, that there was no implied condition in them, growing out of their nature, the claimed deficit in the deliveries not being denied, and there being no conflict of testimony in respect to the state of facts upon which the damages were to be based, there remained in the case no question that required submission to the decision of the jury, and it was not manifest error to direct a verdict for the plaintiffs, and instruct the jury at what amount to assess the damages.

Some minor points of objection are raised, but in them we find no reversible error.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*