### George T. Houston et al. v. William Wendnagel et al.

#### Gen. No. 13,194.

MEASURE OF DAMAGES—*in action for breach of contract to deliver merchandise.* The measure of damages in an action for breach of contract to deliver merchandise is the difference between the contract price and the market price at the time of

delivery as fixed by the contract or at the time of delivery as fixed by an extension of the contract time.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed June 25, 1907.

**Statement by the Court.** This is an action in assumpsit brought by appellees to recover damages for an alleged failure of appellants to comply with a contract. The cause was submitted to a jury which returned a verdict in favor of appellees, assessing damages against appellants at $971. Judgment was rendered accordingly, from which defendants appeal.

Appellees are manufacturers of wooden tanks, and appellants are lumbermen having mills at several points in the southern states. October 14, 1902, appellees gave appellants an order for 100,000 ft. three inch white oak lumber of specified grades at $41 per thousand feet, the ''lumber to be put on sticks by January 1, 1903,'' and shipped the following August. The order was accepted by appellants of date October 15, 1902, the next day after it was given. In answer to appellees' query whether the lumber would ''be cut and put on stick by January 1,'' appellants replied October 17 that they intended to cut the stock at their new mill at Vicksburg, Mississippi, as soon as they could get it in operation, which they expected to be in November, and would then ''start immediately to accommodate your store, and will get it all on sticks by January 1 if possible, or as near as we can, January 5, 1903.'' There appears to have been delay of about six months in furnishing appellants with the machinery for the new mill, caused by a strike. January 10 appellees wrote ''We want to be certain that it has been on sticks fully nine months before shipment is made.'' There is testimony tending to show that it was necessary the lumber should be on sticks that

length of time before being used, that it might be dry enough to prevent leakage in tanks for the manufacture of which it was intended. There was considerable further correspondence. August 22, 1903, appellees wrote that they would ''expect you to ship the 100,000 feet of oak on our order of October 14, 1902, next November.'' August 24 appellants wrote: ''If you can pinch along and give us a little more time, we will certainly take care of you, and you won't lose anything by so doing. Oak will, in our opinion, continue to advance. Meantime as soon as what we have made is dry enough to ship we will overhaul what we have and send you forward a car or two, and per your suggestion we have this day advised our Cairo, Bigbee and Columbus managements to buy any 3-inch shipping dry white oak they could find in their surrounding territory at any reasonable price for your order. It has not been our intention to advise you indefinitely in regard to the situation. We merely had Mr. Crissinger inform you as well as in our letters as much information as we had. We trust you will treat us business-like in the matter and give us credit for our efforts to comply with your demands and instructions.''

August 26th appellants again wrote: ''Have instructed our branches to buy up any 3-inch oak plank suitable for your order that we are able to locate in our surrounding territory. Very much regret we are unable to advise you more definitely. Assure you we will complete your order, but under the circumstances it will take more time, and per our suggestion would like to have you look out for material required for immediate or future use from some other source. We will not allow you to lose a cent in the transaction, providing you will give us time to make and dry the material under the conditions existing, as explained. We hope to do even better than we feel at liberty to advise you with regard to shipments.''

None of the timber contracted for was delivered, and in February, 1904, this suit was begun by appellees to recover damages for the breach of contract. A special count of the declaration avers that appellants "failed and refused to comply with said contract whereby plaintiffs were forced to and did go into the open market in the city of Chicago and purchase said lumber." There is evidence tending to show that appellees purchased lumber at dates beginning September 8, 1903, up to and including November 28, 1904, at Chicago and other cities, at a total cost, including freight, of $5,016.19.

WICKETT, MEIER & BOOTH, for appellants; D. S. WEGG, of counsel.

ADAMS & FROEHLICH, for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is conceded in behalf of appellants that they defaulted in their contract, but contended that the breach occurred in January, 1903, when the lumber was to be cut and piled on sticks to allow it to dry. The lumber was, however, by the terms of the original agreement to be delivered in August of that year. From the correspondence it appears that appellees would have been willing to accept it if delivered in November following. But it was never delivered and there can be no sufficient reason for claiming the breach of the contract occurred before the expiration of the time at which the lumber was to have been delivered.

It is insisted that if the breach occurred in August 1903, then the market price of the lumber at that time is the basis upon which to determine whether appellees have suffered loss or damage from the breach. It is contended that the trial court erred in permitting the introduction of evidence of market conditions at a later date.

Appellees' attorneys, however, call attention to a part of appellants' letter of August 26, 1903, before quoted, in which the latter assure appellees that their order will be completed, but that it will take more time, and suggest they would like to have appellees "look out for material required for immediate and future use from some other source." It is true doubtless that if appellees accepted this proposition and bought material elsewhere or extended the time to appellants by agreement between the parties, "the measure of damage is the difference between the contract price and the market price at the time the article is deliverable by the subsequent agreement; and where the time of delivery is postponed indefinitely the measure of damages is the difference between the contract price and the market value at a reasonable time after demanding performance." Summers v. Hibbard, Spencer, Bartlett & Co., 153 Ill. 102-111.

In their letter of August 22, 1903, appellees wrote they would expect appellants to ship the lumber on the order "next November," an extension of three months. In that same letter appellees wrote they were "very much in need of this material now and on account of this disappointment buy here and there. We are able to get the material and should think you would be. However, if you fill the order on or about the time we mention above, it will be satisfactory." The time of delivery was thus postponed by agreement apparently until November, 1903. As to the buying elsewhere appellants responded August 24, "We should be perfectly willing that you buy a reasonable amount of oak referred to, provided you can do so at not to exceed the price you pay us. You will no doubt have opportunities offered." The breach of the contract under the postponed agreement as to delivery occurred therefore in November, 1903. The measure of damage is the difference between the contract price and the market price at that time. Appellees had then

the right also to go into the market and purchase the lumber at its market value at that time, and if they did so would then be entitled to recover the difference in price they were compelled to pay. The result in either case would be the same. See Sleuter v. Wallbaum, 45 Ill. 45; Van Arsdale v. Rundel, 82 Ill. 63.

Over appellants' objection appellees were permitted to introduce bills of lumber purchased at different times, some of it so late as November, 1904, a full year after the breach occurred. In Sleuter v. Wallbaum, *supra*, it was said by our Supreme Court that "the only safe rule is to confine the measure of damages to the market price at the time of the breach." It was, we think, error to admit in evidence the bills for lumber purchased at later dates. The judgment of the Superior Court will therefore be reversed and the cause remanded.

*Reversed and remanded.*