## M. F. Baringer, Appellee, v. Imperial Cotton Milling Company, Appellant.

### Gen. No. 5513.

MEASURE OF DAMAGES—*in action for failure to deliver merchandise.* "If delivery is postponed by agreement between the parties, the measure of damages is the difference between the contract price and the market price at the time the article is deliverable by the subsquent agreement, and where the time of delivery is postponed indefinitely, the measure of damages is the difference between the contract price and the market value at a reasonable time after demanding performance." (Summers v. Hibbard, Spencer, Bartlett & Co., 153 Ill. 102.)

Assumpsit.   Appeal from the County Court of Peoria county; the HON. CLYDE E. STONE, Judge, presiding.   Heard in this court at the April term, 1911.   Affirmed.   Opinion filed October 13, 1911.

ISAAC J. LEVINSON, for appellant.

IRA J. COVEY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellant is a dealer in cotton seed meal and had its principal office in Peoria and a branch office in Chicago.   On September 8, 1909, appellee made two contracts with appellant through its Chicago office for the delivery of twenty cars or 400 tons of cotton seed meal to appellee, to be shipped to such points tributary to Philadelphia as appellee might designate.   The shipments were to be in October.   Appellant was unable to carry out these contracts and delivered but two cars of meal or 40 tons in October.   Various requests and promises passed between the parties, and appellant delivered nine cars during November, making eleven cars delivered, and leaving nine cars or 180 tons

not delivered. Correspondence followed and appellee bought two cars on December 15 and two cars on December 21, and on December 24 refused to wait any longer, and appellee bought the remaining cars on January 7, 1910. The market was continually rising. Appellee brought this suit to recover the damages he sustained by reason of the failure of appellant to comply with its contract. Appellant concedes its liability, but insists that the damages shall be measured by the market price of the commodity on November 1. The declaration has not been abstracted by appellant nor by appellee, but it appears that it consists of the common counts and five special counts; that the special counts set up the contract and the failure to deliver, and the fourth and fifth special counts allege that appellee and appellant by mutual agreement extended the time for the delivery of the remaining 180 tons so that delivery thereof might be made within a reasonable time after such extension, and that defendant failed to make delivery within such reasonable time. The court below held that there had been such extension by mutual agreement, and allowed for the two cars bought in on December 15 at the then market price, $170, and for the two cars bought in on December 31, at the then market price, $176; and also held that the extension having been terminated on December 24, appellee should have bought in the remaining five cars on December 27, and allowed therefor at the then market price, $450, and allowed for a matter of freight, not here disputed, $20.31, a total of $816.31, for which appellee had judgment, and defendant below appeals therefrom.

The rule governing this case is thus stated in Summers vs. Hibbard, Spencer, Bartlett & Co., 153 Ill. 102.

"In the case at bar, appellees made threats to buy in at seller's expense, but excuses rendered and promises made by appellants of frequent and large shipments deterred them from doing so. If delivery is postponed

by agreement between the parties, the measure of damages is the difference between the contract price and the market price at the time the article is deliverable by the subsequent agreement, and where the time of delivery is postponed indefinitely, the measure of damages is the difference between the contract price and the market value at a reasonable time after demanding performance.''

This has been followed in N. W. Iron & Metal Co. v. Hirsch, 94 Ill. App. 579; and Houston v. Wendnagel, 135 Ill. App. 95. To the same effect is Roberts v. Benjamin, 124 U. S. 64.

Appellant did not treat the contract as at an end on November 1, but made a delivery as late as November 23. On December 4, appellee wrote appellant that the situation was becoming impossible, and then said:

''The matter must be closed up next week. If you are going to close it by giving us bills of lading, we shall be very glad to have it done that way, and forget the fact that you are over a month in default. But if we cannot close it that way, the only alternative is to buy in the unshipped portion for your account, and have you pay the difference.''

On December 6 appellant replied with many excuses why the cars had not been shipped, and saying that the writer was doing everything possible towards having appellee's purchases cleared up that week, and then said:

''The writer will give his personal attention to the balance of your shipments and do everything possible to get the cars to you without further delay.''

To that letter appellee replied on December 8th as follows:

''Replying to your favor of the 6th. We are submitting the matter as you put it, to our customers, and if they do not force us to buy in or take this measure themselves, we will give you the time you request. It must be fully understood, however, that while extending the time at your request, we reserve the right to buy in all or any part of this unshipped meal for your

account if forced to do so by action of our customers.''

On December 14 appellee telegraphed appellant that he must have positive evidence of the shipment of certain cars or he would buy in on the following day; and on December 15 appellee did buy in two carloads and so wired appellant. On December 16 appellant wired appellee, acknowledging receipt of that telegram and saying:

''We are getting out a lot of cars now, and hope to have your customers satisfied within a few days.''

On December 18 appellee wrote appellant and referred to said promises to have appellee's customers satisfied within a few days, and added:

''If you give us invoices for the remaining cars, for which you have full directions, within a few days, we shall be more than glad. We dislike nothing more than to buy in for account of a shipper, who, we believe, is doing his best to fill his contracts, but we cannot longer hold off our people, and during the next week will buy in every car on which we have no positive information of shipment.''

On December 20 appellee wired appellant that he must have delivery of a certain car, and that unless he was furnished with the car number he would buy on appellant's account the next morning. On the same day appellant answered by wire, ''Answering telegram will make every effort to wire you car number to-day or to-morrow early.'' On December 22 appellee wired appellant that he had bought two cars on appellant's account, and appellant wired appellee as follows:

''Wish you would make every effort possible to hold your customers off for a few days, as we are doing all we can to get the cars to you. Anything you can do will be greatly appreciated.''

On December 24th appellee wrote appellant, practically indicating an inability to wait any longer on account of the demands of appellee's customers, and saying that he must have the shipments without further delay. There was some other letters between the par-

ties during the period covered by the correspondence above stated. We cannot doubt that this correspondence shows that the time of delivery was postponed indefinitely by the agreement of the parties. Indeed, appellant's letter of December 22 is an express request for delay. We are of opinion that the trial court decided this question correctly. The price rose between December 27, 1909, and January 7, 1910, and appellant therefore was not injured but benefited by the action of the court in charging the last five cars at the market price on December 27.

The contract was for choice forty-one per cent cotton seed meal. Appellee bought in the Owl brand of cotton seed meal. Appellant contends that this was more valuable than the meal contracted for and commanded a higher price on the market. The preponderance of the evidence is that it was substantially the same article and brought the same market price. Appellant seems to claim that its agent in charge of its Chicago office had no authority to conduct the correspondence which resulted in these extensions, but we are of opinion that the record does not sustain that position.

The judgment is affirmed.

*Affirmed.*