## Paris Flouring Company, Defendant in Error, v. Imperial Cotto Milling Company, Plaintiff in Error.

### Gen. No. 18,108.

1. EVIDENCE—*as to market value.* In an action for damages from failure to deliver cotton seed meal sold, evidence as to the market value of the meal at the time defendant should have performed the contract is admissible.

2. Damages—*sales*. In an action for damages from failure to deliver cotton seed meal, a verdict for the difference between the contract price and the market price a reasonable time after plaintiff demanded performance, is sustained.

3. Evidence—*under section 33 of the Municipal Court Act*. In an action to recover damages for defendant's failure to deliver cotton seed meal sold to plaintiff, the sales agent of defendant at Chicago, having charge of several employees and assistant sales agents, is a "superintendent or managing agent" within section 33 of the Municipal Court Act.

4. Municipal court—*pleading*. In an action of the fourth class in the Municipal Court, written pleadings are not essential and the action is what the proof makes it.

Error to the Municipal Court of Chicago; the Hon. William N. Cottrell, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 29, 1913.

A. Binswanger, for plaintiff in error.

Bryan, Duval, McCormick & Wilber, for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This writ of error is prosecuted to reverse a judgment for $575, rendered by the Municipal Court of Chicago, in a case of the fourth class, in favor of Paris Flouring Company, an Illinois corporation, and having its principal office at Peoria, Illinois, plaintiff, against Imperial Cotto Milling Company, a corporation, and having its principal office at Portland, Maine, defendant. The judgment was entered upon the verdict of a jury.

In September, 1909, the defendant at Chicago, through its sales agent at its Chicago office, sold to the plaintiff five cars or 100 tons of cotton seed meal, at $30.25 per ton, f. o. b. Boston points, for November and December shipment. No part of the meal was delivered to the plaintiff prior to December 31, 1909, nor at any time after that date. Plaintiff's action was

Paris Flouring Co. v. Imperial Cotto Milling Co., 181 Ill. App. 215.

for the recovery of damages occasioned by defendant's failure to deliver the meal.   There was evidence tending to show that for about forty-five days after December 31, 1909, plaintiff was ready and willing to accept a delivery of the meal at the contract price, and repeatedly requested the defendant in writing to make such delivery, and that the time of delivery was extended by the parties.   On January 26, 1910, plaintiff wrote defendant at Chicago:  "Our customers must have this meal, and unless we receive papers immediately we shall be obliged to buy this meal for your account, and shall expect you to make good whatever loss we suffer.  We should probably be obliged to pay about $36 per ton.  *  *  *  We have waited a long time and patiently for the shipment of this meal.  *  *  * We very much prefer to have you make the shipment." To this communication the defendant, by letter written by said sales agent on February 1st, replied:  "We are doing everything possible to get our shipments out: The Illinois Central has suffered the worst blockade in its history and you can realize what this means to us.  We have again written our Peoria office requesting them to give the matter their immediate attention." On February 3rd, plaintiff wrote defendant at Chicago:  "We cannot quite understand why you do not ship the meal, as we have been getting cars very freely from the southwest.  *  *  *  If you cannot induce your Peoria office to make the shipment, perhaps they would prefer to send us check for the difference between the present market, on which we could buy it, say $36, and the contract price.  *  *  *  We must have one thing or the other now."   On February 11th, plaintiff again wrote defendant at Chicago: "We are getting quite discouraged about getting papers on that cotton seed, which we bought for Nov.-Dec. shipment.  *  *  *  Our customers are threatening to prosecute if we do not fill our contracts.  We should like to hear from your general office in Peoria just

218     APPELLATE COURTS OF ILLINOIS.

Paris Flouring Co. v. Imperial Cotto Milling Co., 181 Ill. App. 215.

how the matter stands. * * * It will be quite agreeable to us to buy in this meal ourselves and send you a bill for the loss. We shall be obliged to do something immediately. * * * Let us hear from you by return mail." The defendant, by letter written by said sales agent, replied on February 14th: "We have forwarded your favor of February 11th to our Peoria office and asked them to give it their immediate attention, which we trust they will do so as to relieve you in this matter." Plaintiff did not hear from the Peoria office and the correspondence ended and subsequently plaintiff commenced this action. There was also testimony showing that the fair market price of the grade of meal contracted for, during the month of January, 1910, subsequent to January 7th, and during all of the month of February, at Boston rate points, was $36 per ton, or $5.75 per ton more than said contract price.

We do not think that the trial court erred in admitting the testimony as to the market price of said meal. "If delivery is postponed by agreement between the parties, the measure of damages is the difference between the contract price and the market price at the time the article is deliverable by the subsequent agreement, and where the time of delivery is postponed indefinitely, the measure of damages is the difference between the contract price and the market value at a reasonable time after demanding performance." *Summers v. Hibbard, Spencer, Bartlett & Co.*, 153 Ill. 102, 111; *Baringer v. Imperial Cotto Milling Co.*, 164 Ill. App. 467. Nor do we think that the verdict is manifestly against the weight of the evidence or excessive, as contended by defendant's counsel. The contract price of the meal was $30.25 per ton and the market value thereof, at Boston rate points, after the time for delivery had been indefinitely postponed and after a reasonable time after plaintiff had demanded performance, was $36 per ton. This difference on 100 tons

amounts to $575, which was the amount of the verdict.

On the trial plaintiff, under section 33 of the Municipal Court Act, called as a witness the said sales agent of defendant, S. N. Hoffheimer. That section provides: "That upon the trial or hearing of any suit in the Municipal Court any party thereto, * * * or the directors, officers, *superintendent* or *managing agents* of any corporation which is a party to the record in such suit, may be examined upon the trial thereof as if under cross-examination at the instance of the adverse party or parties or any of them," etc. After the witness had been examined by plaintiff's attorney, as if under cross-examination, and had testified at considerable length, defendant's attorney moved that all of the testimony be stricken from the record on the ground that it was not shown that the witness was a party to the suit, or a director, officer, superintendent or managing agent of the defendant, which motion was overruled, and this ruling is assigned as error. We think that the court's ruling was correct. The evidence showed that the witness was the sales agent of defendant at Chicago; that he had charge of several employees and assistant sales agents at the Chicago office of the defendant, which was located in the Live Stock Record Building, at the stock yards, Chicago, that he was constantly engaged in making sales and developing the business of the defendant "from the sales end of it," and that he, on behalf of defendant, made the contract with the plaintiff here in question with the acquiescence of defendant. We think he was such a "superintendent or managing agent" of the defendant as to come within the purview of the statute.

There is no merit in the contention that the judgment should be reversed because of an alleged variance between plaintiff's evidence and its amended statement of claim. This statement sufficiently advised defendant of the case it was called upon to meet. Furthermore, this was a case of the fourth class, where

220    APPELLATE COURTS OF ILLINOIS.

First Nat. Bk. v. Hogg-Harris Lumber Co., 181 Ill. App. 220.

written pleadings are not essential and the action is what the proof makes it. *Edgerton v. Chicago, R. I. & P. R. Co.*, 240 Ill. 311; *Doherty v. Schipper & Block,* 157 Ill. App. 413, 422.

It may be that some of the court's rulings on certain offered evidence were not proper, as urged by defendant's counsel, but after a careful examination of the record we are not satisfied that the "judgment is contrary to the law and the evidence, or  *  *  *  resulted from substantial errors  *  *  *  directly affecting the matters at issue between the parties" (paragraph 7, sec. 23, Municipal Court Act), and the judgment of the Municipal Court is accordingly affirmed.

*Affirmed.*