**Herbert J. Buchsbaum, Appellee, v. Hyman Halper, Appellant.**

**Gen. No. 35,341.**

Heard in the second division of this court for the first district at the October term, 1931. Opinion filed February 23, 1932.

CUTTING, MOORE & SIDLEY, for appellant; CHARLES S. CUTTING, of counsel.

EISENDRATH, SOLOMON & BORDEN, for appellee; DAVID S. EISENDRATH, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In a fourth class action in contract, commenced on February 28, 1929, the municipal court on May 14, 1931, on plaintiff's motion, struck defendant's amended affi-

davit of merits from the files and, defendant electing to stand by his affidavit, defaulted him "for want of an affidavit of merits." On the same day the court "heard the evidence as contained in the affidavit of plaintiff's claim," found that "there is due to plaintiff the sum of money as shown in said affidavit," and assessed plaintiff's damages at the sum of $1,046.57. Judgment was entered against defendant in said sum and he appealed.

The action is based upon a "real estate sale contract" which is on a printed form, partly in typewriting, and dated November 9, 1926. A copy of the contract is attached to plaintiff's statement of claim and made a part thereof. It is a lengthy instrument and there are many provisions in small printed type, commonly found in such instruments, which are not material to the present issues. The main provisions (those *italicized* below being in *typewriting* and the balance in printed type) are as follows:

"This Memorandum Witnesseth, that *Hyman Halper,* hereinafter called the purchaser, agrees to purchase at the price of *$64,500* dollars the following described real estate, situated in Cook County, Illinois, to-wit: (Here follows description); and *Herbert J. Buchsbaum,* hereinafter called the seller, agrees to sell said premises at said price, and to convey or cause to be conveyed to the purchaser a good title thereto by *Trustee's* deed, with release of dower . . . and homestead rights or estates, subject to:

(1) Existing leases expiring *as made;*

(2) Special taxes or assessments for improvements not yet completed;

(3) The installments not due at the date hereof of any special tax or assessment for improvements heretofore completed;

(4) Water taxes payable after *delivery of deed;*

(5) General taxes for the year *1926* and subsequent years;

 (6) Building lines of record, if any;

 (7) Building or liquor restrictions of record, if any;

 (8) Zoning and building laws or ordinances;

 (9) Party wall rights or agreements, if any;

 (10) Principal indebtedness aggregating *$53,100* secured by mortgage, trust deed or trust deeds of record, which indebtedness the purchaser does (blank) agree to assume; and to

 (11) (blank)

The amount of said indebtedness is included in above mentioned price, but no assumption thereof shall be implied from that fact where the purchaser has not herein expressly assumed said indebtedness.

''Upon the consummation of this sale, existing leases and insurance policies, if any, are to be duly assigned to the purchaser, . . . General taxes for the year *1926* are to be pro rated from January 1, to the date of said deed. . . .

''The purchaser has paid *$3,000* dollars as earnest money to be applied on said purchase when consummated, and agrees to pay, within five days after the title is shown to be good or is accepted by him, the further sum of *$8,400* dollars, provided a deed as aforesaid shall then be ready for delivery. . . .

''Within 15 days from the date hereof, the seller shall deliver to the purchaser (which delivery may be made at the office of *Ash Realty Auctioneers, Inc.*) the following:

''Guaranty Policy of the Chicago Title & Trust Company, in the usual form. . . .

*This property is held by Greenebaum Sons Bank & Trust Company, as Trustee, and the seller agrees to cause said Trustee to execute its Trustee's Deed in accordance herewith. . . .*

"Payment of the price and delivery of the deed herein provided for shall be made at the office of *Eisendrath, Solomon & Borden, 112 W. Adams Street.* . . .

"The mailing of a notice by registered mail to the seller at *Eisendrath, Solomon & Borden, 112 W. Adams Street,* or to the purchaser at *Ash Realty Auctioneers, Inc., 220 S. State St.* shall be sufficient service thereof.

"The seller agrees to pay a broker's commission to *Ash Realty Auctioneers, Inc., as agreed.* . . .

"This contract and the earnest money aforesaid shall be held in escrow by *Ash Realty Auctioneers, Inc.,* for the mutual benefit of the parties hereto. . . . *In case there shall be any error or difference between the representations contained in the circular of Ash Realty Auctioneers, Inc., relating to this sale, describing the above described property, which is hereby incorporated herein and made a part hereof, and the actual income, encumbrances or other matters referred to therein, both parties agree that the errors or differences shall be adjusted upon the closing of the sale by charges or credits to the purchaser or seller and shall not invalidate this contract.*

*"Jacob Alkin is broker for the buyer.*

"Dated this *9th* day of *November, 1926.*"

In plaintiff's statement of claim he alleged that he sold the premises to defendant, Halper, for the sum of $64,500, "subject to principal indebtedness aggregating $53,100, secured by trust deeds of record, which said sum was credited upon said purchase price, the balance thereof being paid in cash by defendant, whereby defendant assumed and agreed to pay said principal indebtedness"; that by said contract defendant "expressly assumed and agreed to pay said indebtedness"; that said indebtedness of $53,100, so assumed, "included, as a part thereof, a principal indebtedness of $23,600, evidenced by the notes of Buchsbaum (plaintiff), dated September 17, 1925, Nos. 5 to 19, both inclusive, for the sum of $600 each, and

No. 20 for the sum of $14,600,—note No. 5 being payable September 17, 1926, and the others being payable on or before every three (3) months thereafter, with interest at 6 per cent per annum, payable quarterly on the entire unpaid balance of such principal indebtedness, secured by trust deed on the property from said Buchsbaum to Morris E. Feiwell, dated September 17, 1925, and recorded September 18, 1925, . . . all of the above described notes being payable to the order of the maker and by him endorsed''; that ''note No. 13 became due and payable December 17, 1928, and was not paid by defendant or the owner of said real estate''; that demand was made upon plaintiff (the maker) for the payment thereof by the holder of said note and plaintiff ''was compelled to pay and did pay to said holder of said note the following sums:

| | |
|---|---|
| "Principal due December 17, 1928 | $600.00 |
| Interest on balance of $18,800, from September 17, 1928 to December 17, 1928 | 282.00 |
| Interest on unpaid principal and interest from December 17, 1928 to January 25, 1929 | 6.52 |
| Attorneys' fees to attorneys for the holders of said paper, payable under the terms of said trust deed | 50.00 |
| Total | $938.52'' |

That thereby plaintiff acquired and is the holder of said note No. 13; that by reason of the foregoing facts, and the failure of defendant to pay said note, plaintiff has been damaged in the sum of $938.52, with interest thereon from January 25, 1929. And plaintiff further alleges that prior to his making said payment he demanded of defendant that he make said payment but defendant refused and still refuses so to do.

Attached to the statement of claim is the affidavit of one Abrahams, stating that he is the duly authorized agent of plaintiff, that he has knowledge of the facts,

that plaintiff's suit is upon a contract for the payment of money, that the nature of plaintiff's demand is as stated, and that there is due from defendant to plaintiff the sum of $938.52, and interest from January 25, 1929.

Defendant entered his appearance and demanded a jury trial. In his amended affidavit of merits by Harold A. Fein, his duly authorized agent, he admits that he purchased the premises, which were subject to a principal indebtedness of $53,100, secured by mortgages thereon, and that on November 9, 1926, entered into the written agreement as set forth in plaintiff's statement of claim. And defendant alleges that on November 30, 1926, plaintiff procured the execution and delivery of a deed, dated November 30, 1926, conveying to defendant the said premises, "a copy of which deed is attached hereto, marked Exhibit A, and the original of which will be produced upon the hearing hereof"; that by the terms, conditions and covenants of said deed a conveyance of the premises was made to defendant *"subject to* trust deeds of record securing a balance of $53,100, taxes for the year 1926, special assessments and installments thereof not due on the date of said deed, existing leases, building lines, building and liquor restrictions, party wall agreements of record, and building and zoning laws"; that by reason of the execution and delivery of said deed "all the terms, conditions and covenants of the agreement of November 9, 1926, became merged in said deed"; and that the deed "contains no provision, covenant or agreement wherein defendant agreed to assume and to pay any existing incumbrance." And defendant further alleges that "it was intended by and between the parties hereto and agreed by them upon the delivery of said deed that such conveyance was to be made only subject to said incumbrances, and that defendant was not to assume and pay said incumbrances or any part

thereof." And defendant further alleged that subsequent to said conveyance to him he conveyed the property to one Leo Hollander, who thereafter on September 30, 1927, conveyed it to one Meyer Finder; that defendant has no information or knowledge as to any default in payment of said note No. 13, as alleged in plaintiff's statement of claim, or that plaintiff was required to pay it, as alleged, and, therefore, defendant neither admits nor denies said allegations but demands strict proof thereof; that if plaintiff was required to pay said note, it was an obligation for which he was personally liable; and that this defendant "did not assume and agree to pay said note." Wherefore, defendant denies that he is indebted to plaintiff in said sum of $938.52, or in any sum.

From the copy of the deed of November 30, 1926, attached to said affidavit, it appears that the first party (Greenebaum Sons Bank and Trust Co., as trustee), "in consideration of the sum of *Ten Dollars,*" conveys the premises to said Hyman Halper, second party, "*subject to* trust deeds of record securing a balance of $53,100," etc.

The ultimate question for our determination is, whether the municipal court erred in striking defendant's amended affidavit of merits from the files and in entering the judgment appealed from. It will be noticed that in the affidavit defendant alleges that by reason of the execution and delivery of the deed of November 30, 1926, "all the terms, conditions and covenants of the agreement of November 9, 1926, *became merged* in said deed"; that the deed "contains no provision, covenant or agreement wherein defendant agreed to assume and to pay any existing incumbrance"; and that "it was intended by and between the parties hereto and *agreed by them* upon the delivery of said deed that such conveyance was to be made *only subject to* said incumbrances, and that de-

fendant was not to assume and pay said incumbrances or any part thereof." In *Gillett v. Teel,* 272 Ill. 106, 112, 113, our Supreme Court says:

"As a general rule, a deed made in full execution of a contract for the sale of land merges the provisions of the contract in the deed, but this is not always the result. If a deed made in pursuance of a contract embraces all the subjects contained in the contract the prior agreement merges in the deed and the agreement can only be resorted to for the purpose of evidence between the parties. An executory agreement, verbal or written, for the performance of distinct and separate provisions is not merged in or superseded by a subsequent deed in execution of a part, only, of such provisions. In such a case the prior contract is superseded only as to such of its provisions as are covered by the conveyance and remains in full force as to its other provisions." (Citing *Laflin v. Howe,* 112 Ill. 253, 260, 261.)

This is the law in other States. (13 Cyc. pp. 616-8.) In the early case of *Houghtaling v. Lewis,* 10 Johns. (N. Y.) 297, decided in 1813, it is said (p. 298):

"Articles of agreement for the conveyance of land are in their nature executory, and the acceptance of a deed, in pursuance thereof, is to be deemed, *prima facie,* an execution of the contract, and the agreement thereby becomes void, and of no further effect. Parties may, no doubt, enter into covenants collateral to the deed, or cases may be supposed when the deed would be deemed only a part execution of the contract, if the provisions in the two instruments clearly manifested such to have been the intention of the parties. But the *prima facie* presumption of law, arising from the acceptance of a deed, is that it is an execution of the whole contract; and the rights and remedies of the parties, in relation to such contract, are to be determined by such deed, and the original agreement becomes null and void."

And certain holdings of the Indiana Supreme Court in the case of *Wayne International Building & Loan Ass'n v. Beckner,* 191 Ind. 664, are, we think, particularly applicable to the present case, especially in view of the stated consideration in the deed, viz., "the sum of ten dollars." The court says (pp. 669, 670; italics ours):

"Obviously the mere fact that the preliminary contract of sale provided that the grantee should 'assume' the mortgage, while the deed of conveyance evidencing the consummated contract recited only that the conveyance was 'subject to' the mortgage, would not prove that the grantee really had assumed and agreed to pay the mortgage. The execution of the deed of conveyance merged all previous negotiations with relation to what should be sold and conveyed. . . . The conveyance of certain described lands 'subject to' a certain mortgage was merely the conveyance *of an equity in those lands.*"

And the law is equally well settled in Illinois and other States, as stated in 2 Jones on Mortgages (8th ed.) pp. 291, 293, sec. 933, that

"A deed which is merely made subject to a mortgage specified does not alone render the grantee personally liable for the mortgage debt (citing, among others, the cases of *Wilson v. Munday,* 238 Ill. App. 575, 584; *Macfarland v. Utz,* 175 Ill. App. 525, 530); to create such liability there must be language which clearly imports that the *grantee* assumes the obligation of paying the debt. (Citing, among others, the cases of *Siegel v. Borland,* 191 Ill. 107, 111; *Drury v. Holden,* 121 Ill. 130, 137.) The assumption of the mortgage by the purchaser will not be presumed." (Citing *Lloyd v. Lowe,* 63 Colo. 288, 290; *Lange v. Bartlett,* 207 Ill. App. 422, 424–5.)

Defendant's counsel here contend that the trial court erred in striking defendant's amended affidavit of merits from the files, and in entering the judgment in

question without hearing evidence as to the defense as set forth in said affidavit. And in support of their contention they argue in substance that, notwithstanding the fact that the *printed* portion of the contract sued upon (being No. 10 of the various matters that the proposed conveyance is therein stated to be subject to) states that the purchaser (defendant) "does agree to assume" the mentioned mortgage indebtedness of $53,100, this provision (as shown by said affidavit) was superseded by the provision on the same subject in the subsequent deed of November 30, 1926, wherein it clearly appears that defendant, for the stated consideration "of the sum of ten dollars," merely purchased the equity of redemption in the premises, and did not agree to assume or to become personally liable to pay said mortgage indebtedness. In view of the allegations in said affidavit, the language of the deed and the authorities above referred to, we are of the opinion that there is substantial merit in the contention and argument, that said affidavit states prima facie a good defense to plaintiff's action, and that the judgment appealed from should be reversed and the cause remanded for a trial upon the merits.

Plaintiff's counsel here strenuously contend that the allegation in the affidavit of merits (viz., that "it was *intended* by and between the parties hereto, and *agreed* by them upon the delivery of said deed, that such conveyance was to be made *only subject to* said incumbrances," etc.) is a mere conclusion, is not an allegation *of fact* and sets up no defense. We cannot agree with the contention. While a statement as to the "intention" of parties without alleging facts showing such intention may be improper pleading, yet we think that the statement that it was "agreed" by the parties upon the delivery of the deed that the conveyance was to be made "only subject to" the incumbrances, is a sufficient allegation of a fact, especially when read in

connection with the language of the deed, a copy of which is attached to the affidavit and made a part thereof. In *Firestone Tire & Rubber Co. v. Ginsburg*, 285 Ill. 132, 136, it is said: "It is not required that the defendant should state the evidence but only the ultimate facts which would give notice of the nature of the defense." Furthermore, it is to be noticed that this is a fourth class action in the municipal court where pleadings are not so essential and the action is what the proof makes it. (*Paris Flouring Co. v. Imperial Cotto Milling Co.*, 181 Ill. App. 215, 219, 220; *Edgerton v. Chicago, R. I. & P. R. Co.*, 240 Ill. 311, 313.) Furthermore, it appears from plaintiff's statement of claim that he seeks to recover from defendant what he paid on his own matured note—No. 13 of a series; that other of his notes of the series, aggregating over $18,000, matured after the present action was commenced; and that the controversy not only involves the amount of said note No. 13, but also ultimately the aggregate amount of the other notes. And in our opinion it is not in the interests of justice that the rights of the parties should be determined by technical rules of pleading, especially where, as here, defendant's affidavit of merits discloses prima facie a good defense to plaintiff's action. There should be a trial upon the merits.

For the reasons indicated the judgment of the municipal court is reversed and the cause is remanded.

*Reversed and remanded.*

KERNER and SCANLAN, JJ., concur.