(No. 27538.—

MAY H. DEIBLER *et al.,* Appellees, *vs.* BERNARD BROS., INC., Appellant.

*Opinion filed January 18, 1944—Rehearing denied March 20, 1944.*

JOHN TONE KELLY, and HARRY L. PETERS, (WILLIAM MCKINLEY, and P. E. PRICE, of counsel,) all of Chicago, for appellant.

MARVIN WALLACH, (LLOYD C. WHITMAN, of counsel,) both of Chicago, for appellees.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from the Appellate Court for the First District on a certificate of importance granted by that court. The cause was there heard on appeal from the municipal court of Chicago.

On June 18, 1940, the parties to this suit entered into a lease. By this lease appellees demised and let to appellant a certain property located in the city of Highland Park for the term of five years beginning on July 1, 1940. Appellant defaulted in the payment of rent for the months of June and July, 1942. On July 7, 1942, judgment was entered by confession under the warrant of attorney contained in the lease for the rentals in default. On the following day an execution was issued which was returned no property found. On July 10, garnishment proceedings were instituted, as ancillary to the original suit, in which the Evanston Trust and Savings Bank was named as garnishee. On August 26, 1942, appellant entered its appearance and filed a motion to set aside the judgment. Affidavits and counteraffidavits were filed. Thereafter, upon a hearing, the judgment was vacated by the municipal court. By the order vacating the judgment the court found that the performance of the lease contract had been rendered impossible by the acts of certain administrative officials of the Federal government, by reason of which the lease was terminated by operation of law.

An appeal was perfected by the plaintiffs to this court. There being no question involved which would give this court jurisdiction on direct appeal, the cause was transferred to the Appellate Court for the First District. That court reversed the judgment of the trial court and remanded the cause with directions to reinstate the judgment. (*Deibler* v. *Bernard Bros.* 319 Ill. App. 504.) In its order allowing the appeal to this court, the Appellate Court

certified that the cause involves questions of law of such importance that it should be passed upon by this court.

Appellant contends that the sole purpose for which the demised premises were leased, and the only purpose for which the premises could be used, under the lease, was the sale of new automobiles; that this purpose has been rendered impossible by governmental action, which terminated the contract as a matter of law. By its motion to vacate the judgment and the affidavits filed in support of such motion, it set out certain orders of the Federal Director of Priorities limiting and, in some respects, prohibiting, the manufacture and sale of automobiles generally throughout the country. It is alleged that, by these orders, the contract was rendered impossible of performance and, consequently, the lease terminated with the promulgation of such orders.

The record furnishes a conclusive answer to this contention. It is predicated on the false premise that the property was leased for the sole purpose of conducting therein the business of the sale of new automobiles and could not be used for any other purpose without violating the lease. From this erroneous assumption the well-known rule is relied on that when the continued existence of a particular person or thing is necessary to the performance of a contract, the death of the person or the destruction of the thing will terminate the contract. *People ex rel. Palmer* v. *Peoria Life Ins. Co.* 376 Ill. 517; *Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610; 2 Restatement of Contracts, sec. 458.

The purpose for which the leased premises were let must be ascertained from an examination of the lease. Reference to the lease discloses that it contains no provision as to the purpose, or purposes, for which the property should, or could, be used. There are no restrictions in the lease as to such use. Its use is neither limited nor

defined in the lease. The lease was prepared on a blank form. In the blank, a space was provided for the insertion of the purpose for which the leased premises were to be used by the lessee. Nothing was written in that space. As prepared and executed by the parties, the lease recites that the lessor has demised and let to the lessee "the premises known and described as follows, to-wit: Automobile showroom & garage located at 22 & 24 So. First Street, Highland Park, Illinois. To be occupied for ........ and for no other purpose whatever, in the City of Highland Park, County of Lake and State of Illinois." Then follows the clause fixing the term of the lease and the obligation of the lessee to pay the rent reserved. This is followed by various other provisions, none of which limit or restrict the use or occupancy of the property to any particular use or purpose.

This reference to the lease shows conclusively that the continued existence of any particular thing or business was not within the contemplation of the parties or inherently necessary to the full performance of the contract. It is not claimed that the performance of the contract has been prohibited by law or that such performance is inherently impossible. The only claim is that by reason of certain restrictions, relating to the manufacture and sale of new automobiles, imposed by Federal authority, it has become more difficult for the lessee to carry on the particular business for which the leased premises were used by it prior to the imposition of such restrictions. The fact that the inability of appellant to obtain its usual and normal former supply of new cars for sale, or its inability to obtain any such cars, has rendered its business less profitable and its ability to pay the rentals more burdensome, does not relieve it from the obligations of the lease. By the lease it was obligated to pay the rental therein reserved during the full term of the lease. It was in nowise re-

stricted in the use of the premises. It was at liberty to use the leased premises for any lawful purpose. No provision was inserted in the lease excusing the lessee from the performance thereof because of any condition which might thereafter arise, affecting the volume of, or the profits arising from, its business, or its financial convenience or ability to pay the rent.

This question was first presented to this court many years ago in *Bunn* v. *Prather*, 21 Ill. 217. It was there said, quoting from Chitty on Contracts, "It is a familiar principle of law 'That when the law casts a duty on a party, the performance shall be excused by act of God; but when a party, *by his own contract,* engages to do an act, it is deemed his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility in certain events; and in such case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident, or other contingency, although not foreseen, by or within the control of the party.' "

In *Dehler* v. *Held*, 50 Ill. 491, it was said, "As a general rule, where a party binds himself to perform an act, he is held to its performance, except where it is rendered impossible by the act of God or the public enemy. The mere fact that it may be inconvenient, or attended with loss, is no excuse."

It is elementary law that, when the contract is to do a thing which is possible in itself, the promisor will be held liable for a breach thereof, notwithstanding it was beyond his power to perform it, for it was his own fault to run the risk of undertaking to perform any impossibility, when he might have provided against it by his contract. (*Walker* v. *Tucker*, 70 Ill. 527.) The general doctrine is that where parties, by their own contract and positive undertaking, create a duty or charge upon themselves, they must abide

by the contract and make the promise good. Inevitable contingencies afford them no relief, for they are regarded as insurers to the extent of making good the loss. It is a principle of the law that, in contracts in which the performance depends on the continued existence of a given or specified person or animal or thing, a condition is implied that the impossibility of performance, arising from the perishing of the person, animal or thing, shall excuse the performance. But there is no place for the application of that rule to a contract not dependent upon the continued existence of some particular person, animal or thing. *Summers* v. *Hibbard, Spencer, Bartlett & Co.* 153 Ill. 102.

In *Phelps* v. *School District* 302 Ill. 193, it was said that if the performance of the contract had been legally impossible it would have been unenforceable, but its performance was not legally impossible. When made, the contract was lawful and valid. Its performance was rendered impossible by the subsequent happening of a contingency which could not be foreseen or known when the contract was made, and the rule is that if one of the parties desires not to be bound in the event of the happening of such a contingency, he must so provide in the contract. The general doctrine is well settled that when a party contracts to do a thing without qualification, performance is not excused when, because of inevitable accident or other contingency not foreseen, it becomes impossible for him to do that which he agreed to do. This rule was later announced and adhered to in *Cermak* v. *Schaaf,* 308 Ill. 61. The above rule is exhaustively annotated and discussed in a note in L. R. A. 1916F, page 10. The decisions are in complete harmony on this question.

We regard the statement in the affidavits in the record as to the character of the use made of the premises by appellant, prior to the time it abandoned the same, as wholly immaterial. It had the right, under the lease, to use the premises for any lawful purpose. Neither do we

attach any importance to the showing in the record that appellant continued the same business in a nearby city and, by published advertisements, solicited its customers to bring their business to such other nearby location. Here there is no claim that it was impossible for appellant to continue the business, or that any business for which it had the right to use the demised premises had become unlawful. The only claim is that appellant's business had been rendered more difficult and, perhaps, less profitable by the restrictions imposed upon that particular business. Whatever may have been the extent of the power of the Director of Priorities to impose the restrictions on the manufacture and sale of automobiles, it could hardly be said to be an act of God.

It would certainly be an innovation to establish a rule that all lessees, affected in the same way, were relieved from the obligations of their leases. It would be most difficult to suggest a business which has not been affected in some way, by the prevailing conditions. It would not be an exaggeration to assert that the business of every retail dealer and merchant in the land has been reduced because of his inability to obtain an adequate supply of goods to meet the necessities of his former customers. It is common knowledge that retail business generally, and of every kind, has been made more difficult and, no doubt, on the whole, less profitable, by innumerable restrictions and governmental regulations. If all such merchants and others, for that reason, are to be relieved of the obligations of their contracts, then every butcher, grocer, merchant and other dealer, could abandon his lease with impunity. All such lease contracts would be wiped out with one fell swoop, because their business had become less profitable. The record falls far short of showing conditions which would place appellant in a position to abandon the lease or to be relieved from the obligations thereof.

A considerable portion of appellant's brief and reply brief are devoted to objections to the notice of appeal filed in the trial court. The order vacating the judgment was entered on September 24, 1942. The notice specified that the appeal was taken from that order. It is said that the order was not a final judgment at the time the notice of appeal was filed. By the order, the suit was dismissed and the costs were taxed to the plaintiffs. On October 23, 1942, the order was amended *nunc pro tunc* as of September 24, 1942, so as to include a finding that the lease in question "having been rendered impossible of performance by Acts of Congress and the Orders and decrees attached to defendant's motion, * * * said lease by reason thereof has become terminated by operation of law.".

The notice of appeal was filed on October 13, 1942. On October 9, 1942, a motion was filed by plaintiffs to vacate the order of September 24, 1942. It is argued that because of the pendency of the motion to vacate the order and judgment entered on September 24, 1942, that order and judgment did not become final until the motion to vacate had been disposed of. From this premise it is elaborately argued that, at the time the notice of appeal was filed on October 13, the judgment appealed from was not a final judgment and that no appeal would lie therefrom.

The order of September 24 was a final judgment. It finally disposed of the case and taxed the costs to the plaintiffs. It finally determined the rights of all parties. The mere fact that a motion to vacate the judgment was thereafter filed did not suspend the judgment nor affect its finality, unless and until the judgment was actually vacated. The mere filing of the motion to vacate did not operate to vacate the judgment. Nor did it suspend or postpone the date on which the judgment became final. Such judgments are final when entered, subject only to be set aside or vacated on motion filed within the time allowed by law.

The judgment here was a final judgment when entered on September 24, 1942. It was such a judgment that an appeal could be taken therefrom at any time thereafter within the limitations of the statute. Appellant's argument, if sustained, would mean that no appeal could be taken from any judgment until it became final by the expiration of thirty days after its entry. Such construction would be in hopeless conflict with the plain provision of section 82 of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 206.) Under that section, in order for the notice of appeal to operate as a *supersedeas* without a special order of the court, the notice of appeal must be filed within twenty days "after the entry of" the judgment appealed from. No provision of either the Judgments Act or the Civil Practice Act can be construed as meaning that a judgment is not final, in the sense that no appeal will lie therefrom, until the expiration of thirty days after its entry, and until any motion to vacate which may be filed has been disposed of.

Another objection to the notice of appeal which is argued with apparent earnestness is the statement that two notices of appeal were filed on different days. It is pointed out that the first notice was filed on October 13. It is contended that no proof of service of that notice was filed. Instead, it is alleged that on October 14 a second notice of appeal was filed with proof of service on opposite counsel endorsed thereon. It is asserted that no proof of service of the first notice of appeal was filed within five days after such notice was filed and, for that reason, such notice became ineffective. It is said also that the second notice of appeal, filed on October 14, was a nullity because the first notice was filed on October 13. The contention is that plaintiffs, having filed the first notice without proof of service, could not thereafter file a second notice which would operate to perfect the appeal, under *People ex rel.*

*Bender* v. *Davis,* 365 Ill. 389. That case involved a different question and a different factual situation entirely.

An examination of the record here shows that the confusion which is the basis for the argument can be clarified by a simple statement of the facts. The record shows that the notice of appeal was filed on October 13. No proof of service on opposite counsel was filed with or attached to that notice. The parties filing such notice of appeal had five days after the notice was filed, in which to file proof of service. (Rule 34(3), 370 Ill. 36.) The record further shows that on the following day a duplicate of that notice, upon which was endorsed the receipt of opposite counsel for a copy of the notice, was filed. This copy bears the notation or endorsement on its face "Proof of Service." It is clear that this copy of the notice which was filed on October 13, was filed on the following day, as proof of service of a copy on opposite counsel. The copy of the notice, filed on October 14, was nothing more nor less than a receipt of opposite counsel for a copy of the notice of appeal which was filed on October 13. Such receipt was written on the copy of the notice which was filed on October 13, for the purpose only of identifying the notice referred to in the receipt. This copy was not intended to be another notice of appeal and it cannot be so construed. The appeal was, therefore, perfected strictly in accordance with the statute. There are no reversible errors in the record.

The judgment of the Appellate Court for the First District, reversing and remanding the cause, with directions, was right. That judgment is, in all respects, affirmed.

*Judgment affirmed.*