(No. 28988.—

A. G. LEONARD *et al.,* Trustees of Central Manufacturing District, Appellees, *vs.* THE AUTOCAR SALES AND SERVICE COMPANY, Appellant.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

HAYES, SHEHEE & QUIGLEY, (RAYMOND F. HAYES, and J. GLENN SHEHEE, of counsel,) all of Chicago, for appellant.

WINSTON, STRAWN & SHAW, (HAROLD A. SMITH, and EDWARD J. WENDROW, of counsel,) all of Chicago, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellees, A. G. Leonard, F. H. Prince, and D. H. Reimers, as trustees of the Central Manufacturing District, recovered a judgment in the superior court of Cook county against the Autocar Sales and Service Company, a corporation, in the sum of $9536.10. The Appellate Court affirmed the judgment, and the cause is now before us for review upon a certificate of importance granted by the Appellate Court.

On September 1, 1926, appellees and appellant entered into a written lease whereby appellees demised to appellant certain property at the intersection of Pershing road and South Hermitage avenue in the city of Chicago for a term of years from December 1, 1926, to and including November 30, 1946. Shortly prior to March 11, 1943, the Secretary of War requested the Attorney General of the United States to institute proceedings to acquire by condemnation the temporary use of the entire property for a term ending June 30, 1943, with the right to extend the term for additional yearly periods thereafter at the election of the Secretary of War. Pursuant to the request, the Attorney General, on March 11, 1943, filed in the District Court of the United States a petition for an order condemning the property for such temporary use and granting the government the right of immediate possession for military and other war purposes. On the same day, March 11, 1943, the District Court entered an order declaring the temporary use of the property condemned for a term ending June 30, 1943, with the right to extend the term for additional yearly periods thereafter at the election of the Secretary of War, and granting the United States the right of immediate possession. About March 25, 1943, appellant removed its place of business from the premises described in the lease, and thereafter refused to pay further rent under its lease of said premises. On May 1, 1943, the Secretary of War served notice of his election to extend the term of such temporary use for an additional yearly period beginning July 1, 1943, to and including June 30, 1944.

January 7, 1944, appellees brought this action to recover the stipulated rental provided in the lease for the period from April 1, 1943, to and including January 1, 1944. Defendant answered, setting up the above facts as to the appropriation of the leased premises by the Federal Government for military and war purposes, and alleging that by reason thereof it was evicted by paramount right

from the entire premises and the relation of landlord and tenant terminated by law; that the premises were rendered incapable of occupation for any purpose consistent with the lease and all liability of the defendant to pay rent under the lease ceased on March 11, 1943, the date of the order of condemnation. A motion to strike the answer was sustained. Appellant stood by its answer. A hearing was had assessing appellees' damages and judgment entered for the amount asked in the complaint.

The question in this case is whether appellant is liable under the lease to pay rent during the time that the exclusive possession and temporary use of the demised premises has been taken by the government and appropriated to military and war purposes. The judges of the Appellate Court certified that in their opinion the questions of law involved in this case were of such importance that they should be passed upon by this court. These questions are (1) whether the taking and appropriation by the government, under the power of eminent domain, of the temporary and exclusive use of demised premises for an indefinite period, which may fall short of or exceed the remaining term of the lease, by operation of law terminates the lease and abrogates the relation of landlord and tenant; (2) whether the doctrine known as "frustration of purpose" or "commercial frustration" is applicable to a lease; and (3) whether such appropriation of the demised premises to public use, in the event the same should not be considered as dissolving the contract of leasing, would nevertheless operate to abate the rent *pro tanto,* and to discharge the lessee from liability to the lessor for rent accruing during the period of such appropriation by the government of the use of the demised premises.

Accepting for discussion the theory that in ascertaining the rights of the parties the lease should be treated solely as a contract and its aspects as a conveyance entirely disregarded, we will first refer to some general principles

governing the construction and enforcement of contracts. They are well established and the general rule is that where parties, by their own contract and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end. This doctrine has been often announced by this court. (*Deibler* v. *Bernard Bros., Inc.,* 385 Ill. 610; *Phelps* v. *School District No. 109,* 302 Ill. 193; *Summers* v. *Hibbard, Spencer, Bartlett & Co.* 153 Ill. 102; *Steele* v. *Buck,* 61 Ill. 343; *Bunn* v. *Prather,* 21 Ill. 217.) To this general rule there are certain exceptions. In *Steele* v. *Buck,* 61 Ill. 343, performance was not excused although rendered impossible by act of God, nevertheless we find in the earlier case of *Dehler* v. *Held,* 50 Ill. 491, the statement, recently quoted with approval in *Deibler* v. *Bernard Bros., Inc.,* 385 Ill. 610; "As a general rule, where a party binds himself to perform an act, he is held to its performance, except where it is rendered impossible by the act of God or the public enemy." No authority is cited or reason given for recognizing these exceptions. A further exception has been recognized that in contracts to whose performance the continued existence of a particular person or thing is necessary, a condition is always implied that the death or destruction of that person or thing shall excuse performance. (*Martin Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610.) The reason given for this exception, which is itself a rule, is that without any express stipulation that the destruction of the person or thing shall excuse the performance, that excuse is by law implied, because from the nature of the contract it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing. (*Ellis* v. *Atlantic Mutual Ins. Co.* 108 U. S. 342, 2 S. Ct. 746; 12 Am. Jur. 945, sec. 372.) The doctrine of frus-

tration is an extension of this exception to cases where the cessation or nonexistence of some particular condition or state of things has rendered performance impossible and the object of the contract frustrated. It rests on the view that where from the nature of the contract and the surrounding circumstances the parties when entering into the contract must have known that it could not be performed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist. (*Greek Catholic Congregation of Borough of Olyphant* v. *Plummer,* 338 Pa. 373, 12 Atl. 2d 435, 127 A.L.R. 1008; 12 Am. Jur. 953, sec. 377.) While not new, this doctrine of frustration or "commercial frustration," as it is so termed, first came into prominence following the first World War when contracts for the sale of specified materials or for the shipment on specific vessels or to specific ports were made impossible of performance by war restrictions, embargoes, or seizure of the vessel, and relief was sought on the theory that the parties had contracted on the footing that peace would continue to exist.

The exceptions to the rule that performance of a contract is not excused because of subsequent events rendering performance impossible grow out of the mode of construing the contract; and it is for the purpose of fulfilling the intention of those who entered into the contract that a condition excusing performance is implied. The contracting parties are, in each instance where an exception to the general rule is applicable, absolved from their obligations, not because subsequent contingencies have rendered performance impossible, but because the contract was not in reality

an absolute contract, binding them to perform under such changed conditions. It may readily be conceded that one may absolutely bind himself to perform a certain act; but the question in all cases is whether it was the intention of the parties that he should be so bound. A construction that the parties to the contract did so intend must be put upon an unqualified undertaking where the event which caused the impossibility might have been anticipated or guarded against in the contract. *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hoyt,* 149 U. S. 1, 13 S. Ct. 784; *Phelps* v. *School District,* 302 Ill. 193.

It is apparent, from a reading of the decision in the *Phelps case,* that the defense there urged by the school district, although not designated by such nomenclature, was in reality none other than the defense urged in the case at bar as the doctrine of frustration, namely, that changed conditions, not existing when the contract was entered into, rendered performance of the contract impossible and its purpose thwarted. The contention was not sustained. A like holding was made in *Deibler* v. *Bernard Bros. Inc.* 385 Ill. 610. While the subject matter of the contract in the present case is not the same as that of the contract in the *Phelps case,* there is a decided analogy between the two cases. It is well settled that where a lessee has expressly covenanted to pay rent, an assignment by him of the lease does not relieve him of liability for rent subsequent to the assignment, since in such case, although the privity of estate is terminated by the assignment, the privity of contract is unaffected. (32 Am. Jur. 313, sec. 358; *Barnes* v. *Northern Trust Co.* 169 Ill. 112; *Consolidated Coal Co.* v. *Peers,* 166 Ill. 361; *Grommes* v. *St. Paul Trust Co.* 147 Ill. 634.) When it is remembered that every lease possesses a double aspect, being both a conveyance and a contract, a ready explanation may be found for the view that a lessee may cease to be entitled to the possession yet remain bound by his contractual obligation to pay rent.

Nor is there any place here for an application of the rules governing the construction of contracts whose subject matter has subsequently been destroyed or ceased to exist. The subject matter of the contract is the property located at the intersection of Pershing road and South Hermitage avenue in Chicago. This property, which was demised and conveyed by the lease-contract for a term of years ending November 30, 1946, is undestroyed and still in existence. The appropriation of its temporary use by the United States for a period from March 11, 1943, to June 30, 1944, merely carved out of appellant's long-term lease a short-term occupancy, (*United States* v. *General Motors Corp.* 323 U. S. 373, 65 S. Ct. 357,) and destroyed neither the property nor appellant's lease-hold estate therein. Nor does the provision in the order of condemnation, granting to the United States the right to extend the term of its occupancy for additional yearly periods, operate to destroy appellant's leasehold estate. It does not appear that the United States has extended its term of occupancy for additional periods covering the entire remaining term of the lease or has appropriated the whole of such remaining term; and, until it does do so, there is no basis for any claim that the leasehold estate granted to appellant has ceased to exist or has been destroyed. Whether the lease would be terminated and appellant absolved from liability thereunder in the event the government should so appropriate the whole of the remaining term of the leasehold estate, is a question not before us and upon which we express no opinion.

The next question for determination is the lease and its aspect as a conveyance of an interest in real estate and the effect of the condemnation proceedings upon the leasehold estate and the relation of the parties as landlord and tenant. The right of eminent domain is an inherent attribute of sovereignty. It is defined as the right of the Nation or State, or those to whom the power has been lawfully

delegated, to condemn private property for public use, and to appropriate the ownership or possession of such property for such use, upon paying the owner just compensation, to be ascertained according to law. (*Sanitary District* v. *Manasse,* 380 Ill. 27.) It extends to every kind of property, including not only that which is tangible, but all rights and interests of any kind. (*South Park Comrs.* v. *Montgomery Ward & Co.* 248 Ill. 299.) The right of the citizen to own, possess and enjoy his property must necessarily give way to the right of the sovereign to appropriate it to public uses, when, in the judgment of the sovereign power, public interest will be promoted. (*Penn Mutual Life Ins. Co.* v. *Heiss,* 141 Ill. 35.) A lessee, as tenant of an estate for years, takes and holds his term in the same manner as any other owner of real property holds his title, subject to the right of the sovereign to take the whole or any part of it for public use, upon the payment to him of just compensation. (*Corrigan* v. *City of Chicago,* 144 Ill. 537; *Stubbings* v. *Village of Evanston,* 136 Ill. 37.) That appellant is entitled to receive from the government full compensation for so much of its leasehold estate as is appropriated to public use and thereby obtain complete indemnity for its loss is not open to question. (*United States* v. *General Motors Corp.* 323 U. S. 373, 65 S. Ct. 357.) Accordingly, there is no hardship or injustice in holding it to the payment of the rent which is the consideration for which the term was granted. In cases where the land itself is taken, no owner would attempt to claim that his liability for payment of the purchase price to his grantor from whom he received the property would be thereby extinguished or that a mortgage upon the condemned premises would, as between the parties thereto, be invalidated. When the reversion and the leasehold unite in the same owner, the leasehold estate comes to an end by reason of its merger in the reversion; and the same result occurs when the interests of both the reversioner and

the lessee are taken by some public authority under its power of eminent domain. The rule is well settled that where the complete estates of both landlord and tenant in the entire demised premises are taken by condemnation, the obligation to pay rent ceases; (*Corrigan* v. *City of Chicago,* 144 Ill. 537) and that where the complete estates of both landlord and tenant in a part only of the premises are so taken, leaving a part susceptible of occupation under the lease, the tenant is not relieved from the payment of any part of his rent. *Yellow Cab Co.* v. *Stafford-Smith Co.* 320 Ill. 294; *Corrigan* v. *City of Chicago,* 144 Ill. 537; *Stubbings* v. *Village of Evanston,* 136 Ill. 37.

It is appellant's contention that the taking by the United States in this case of the temporary use of the entire leased property for a definite period of shorter duration than the remaining term of the lease, with the right to extend said temporary use for additional yearly periods, constitutes a termination of the lease by operation of law and absolves appellant from liability for further payment of rent. Appellees contend that the condemnation proceedings do not excuse appellant from its liability on the covenant to pay rent. Both cite and rely, in support of their respective contentions, on the cases of *Corrigan* v. *City of Chicago,* 144 Ill. 537, and *Yellow Cab Co.* v. *Stafford-Smith Co.* 320 Ill. 294. Appellant contends that according to these decisions the test to apply in determining whether the condemnation operated to excuse the further payment of rent is whether the taking rendered the leased premises incapable of occupation under the lease. Appellees claim the test is whether the estate of the landlord has been extinguished.

For full explanation it is necessary to make, in this respect, an extended analysis. In the *Corrigan case* the appellant was the owner of the north 40-feet of a lot fronting on Congress street in the city of Chicago. The north half of this parcel of land he leased to one Emma Brink-

worth for a term of 26 years; and on the same day by a similar lease for the same period of time, he leased the south half to one McCarty. During the term of these leases the city of Chicago condemned the north 34-feet of the lot, thus taking the entire premises leased to Brinkworth and 14 feet of the property leased to McCarty. The purpose and effect of the condemnation proceedings were not to acquire merely the leasehold interest in the property taken, but to appropriate to public use the property itself and all interests therein. Just compensation for the property taken was found by the jury to be $102,000, and the same was awarded to the landowner, less the amounts found as the value of the leasehold estates in the land taken, which were awarded to the respective tenants. The court instructed the jury "that the taking of property held by a tenant, under a lease existing at the time of filing the petition to condemn, does not release the tenant from the payment of rent, or any part thereof." The landlord was not satisfied with the distribution of the compensation to be paid by the city for the property. He appealed to this court, challenging the correctness of this instruction. This instruction we held erroneous as to the tenant Brinkworth, whose whole tract of land was condemned, and proper as to the tenant McCarty, only a portion of whose land was condemned. We there stated that when a portion only of the land is taken, and a portion remains which is susceptible of occupation under the lease, the covenants of the lease are not abrogated, and the tenant is bound by .his covenant to pay full rent according to its terms; that in such case the lessee would not be entitled to apportionment or an abatement of the rent for the part of the land taken, but was bound to pay rent for the whole of the premises demised. We further said "We think, that while the condemnation proceeding may not amount to a technical eviction, that where the entire tract of land, or lot, is taken, the effect is to abrogate the relation of landlord and tenant.

By virtue of such proceeding, whatever title the tenant has in the land passes to the State, or corporation, in whose behalf the right of eminent domain is exercised; and precisely the same is true of the landlord's estate or interest. The effect is an absolute extinguishment of the right and title of both in, or control over, the subject of the demise. It is in effect eviction by paramount right, and has all the force of an eviction by a paramount title, coupled with a conveyance by the owners of their respective interests." We called attention to the rule that a tenant, although not allowed to dispute his landlord's title, may always plead that his interest terminated before the alleged cause of action arose, and pointed out that in the cases from other jurisdictions where rent was sought to be collected from a lessee of demised premises taken by the public through exercise of the power of eminent domain, the discharge of the lessee from liability for rent was placed upon the ground that the landlord's title was absolutely extinguished in the leased estate and he could not, therefore, after its extinguishment, enforce the contract for the payment of rent. We said: "It would seem, therefore, that where the title of the landlord is extinguished in the whole estate during the term, the liability of the tenant to pay rent also ceases; and that in any action brought by the landlord for the rent accrued after the termination of his estate, the tenant may plead such termination in defense." And further: "We are of opinion that the better rule is, that where the estate of the landlord, in the whole of the demised premises, as well as that of the tenant, is extinguished by the condemnation proceedings, the liability of the tenant to pay rent ceases upon the termination of such estates."

From what was said in the *Corrigan case,* the rule seems to be well settled that in order for a tenant to be excused from the payment of rent because of the condemnation of the demised premises, it is essential that the estate of the landlord be extinguished by the condemna-

tion proceedings. No decision of this court can be found inconsistent with this rule; and we can see no reason for departing therefrom. We regard this rule and the reasoning upon which it is based as sound; therefore, it necessarily follows, that the taking by the United States of the temporary use, only, of the premises in question does not affect the liability of appellant for the payment of rent.

We deem it unnecessary to enter upon a further discussion of the case. We are satisfied that the judgment of the Appellate Court is right, and it is affirmed.

*Judgment affirmed.*