34773, 34774: SNOW *et al. v.* NASH; and *vice versa.*

DECIDED FEBRUARY 12, 1954.

*Martin, Snow & Grant,* for plaintiffs in error.

*Anderson, Anderson, Walker & Reichert,* contra.

FELTON, J. William A. Snow and J. B. Bryan petitioned Bibb Superior Court for a declaratory judgment, naming as defendant therein Charles E. Nash. The plaintiffs sought a declaration of their rights under certain lease agreements existing between them and the defendant. The court, sitting without the intervention of a jury, found for the defendant, and the plaintiffs except in the main bill of exceptions.

On August 1, 1945, Charles E. Nash, as lessor, and The Candlelight, a corporation, entered into a lease agreement on certain real property in Bibb County. The only provision of the lease that we are now concerned with is as follows: "The lessee covenants and agrees, for itself and its successors, that, for and during the entire term of said lease and any and all renewals thereof, at its own expense, it shall: . . . (2). Not transfer or assign said lease or any interest therein to anyone without first obtaining the written consent thereto of the lessor."

On September 10, 1945, Charles E. Nash, as lessor, and J. A. Snipes and William A. Snow, as lessees, entered into an agreement which in part reads as follows: "For and in consideration

of the sum of five dollars ($5.00) paid by the lessees to the lessor, the receipt of which is hereby acknowledged, the lessor hereby leases to the lessees, and the lessees hereby lease from the lessor, the property described in an agreement dated the 1st day of August, 1945, between Charles E. Nash and The Candlelight, Inc., for a term of five (5) years commencing the 15th day of September, 1945, with the right to renew for two additional five-year periods upon the same conditions, in accordance with the terms and conditions of said agreement, reference to which is here made for the terms thereof and by reference incorporated herein, . . . *and subject to the following conditions and agreements:* . . . (5) In the event of the dissolution of the partnership between the lessees for any cause whatsoever, it is agreed by the lessor that the conditions of this agreement may be performed by either lessee and the partner withdrawing from the business shall be discharged from any obligation for future performance of the covenants herein. The surviving or partner continuing the business shall have the right to introduce a new partner, who shall have the same rights hereunder as the original lessees." (Emphasis supplied.)

Subsequently to the agreement of September 10, 1945, the partnership between J. A. Snipes and William A. Snow was dissolved, and thereafter William A. Snow introduced J. B. Bryan as a new partner in the business conducted on the leased premises. William A. Snow now desires to retire from the partnership of Snow and Bryan and to dispose of his interest in the partnership by selling same to J. B. Bryan; and Bryan desires to introduce a new partner to operate the business with him as a partnership. The defendant Nash contends that section (5) of the agreement of September 10, 1945, relating to the introduction of a new partner in the business upon the dissolution of the old partnership, was personal to and could be exercised only by the named lessees in the agreement, that is, Snow and Snipes, and that, since the dissolution and introduction provision had been invoked once, it was now inoperative, and that the dissolution of the partnership of Snow and Bryan and the introduction of a new partner by Bryan would constitute an assignment of the lease which, under the terms of the lease of August 1, 1945, would require the written consent of the lessor, Nash.

The contentions of the lessor are not well founded for several reasons. The original lease was between the lessor and a corporation, in which the stipulation against assignment without the lessor's consent gave to the non-assignment provision a particular meaning, to wit, that the lease could not be assigned in a manner in which a corporation could assign. When the new lease was made, the non-assignment provision was incorporated into the new lease by reference to the first lease, and the provisions with reference to the withdrawal and substitution of parties were inserted in the new lease. The non-assignment agreement was expressly made subject to the withdrawal and substitution of partner provision. In view of the fact that the new lease was made by the lessors with a partnership and its members, and contained the withdrawal and substitution agreement to which the non-assignment provision of the original lease was subject, the non-assignment provision will be construed to mean such assignments as the partnership might make in the same manner as corporations could make an assignment, for the reasons that the new lease was made with a partnership and the non-assignment provision was expressly modified by the withdrawal and substitution agreement, which was the introduction and approval of a method of assignment or transfer entirely peculiar to partnerships. Then again, the incorporation into the new lease of the non-assignment agreement by reference, under the facts of this case, did not have the effect of placing this provision chronologically *before* the withdrawal and substitution agreement so as to give it precedence over the withdrawal and substitution agreement. Under the facts, the intention of the parties as it appears from the entire instruments will be given effect. In the next place, the lessor admits and concedes that the withdrawal and substitution agreement is valid and binding, but contends that it permits only one withdrawal of a partner and one substitution. This particular provision is paragraph 5 in the new lease. Such a concession by the lessor is inconsistent, because he agrees that paragraph 5 is valid for one withdrawal and substitution but no more, and he bases his argument for such a limitation on the non-assignment provision in the original lease with the corporation. If the non-assignment provision controlled and prevented any withdrawal or substitution, it would have prevented the first withdrawal and substitution as well as additional ones.

Paragraph 5 of the new lease is valid for all purposes or it is not valid at all. If it is contrary to a dominant non-assignment provision, it goes out. If it is not contrary to the non-assignment agreement, and we hold it is not, and is valid at all, and we hold that it is, it is valid for all purposes and will be given full force and effect. Irrespective of what is said about the lessor's concession as to paragraph 5 of the last lease, we hold that paragraph 5 is effective and binding on the parties for the other reasons given. That leaves only one question more to be decided, and that is, what is the meaning of paragraph 5. This paragraph was not a personal privilege of Snow and Snipes which could be exercised only once. It stated that the new partner "shall have the same rights hereunder as the original lessees." This provision, allowing dissolution and substitution, was a *right* of each of the original lessees under the later lease agreement. When Bryan was substituted for Snipes as a partner, under the clear and unambiguous language of the later agreement he became vested with all the rights Snipes and Snow had under the lease and agreement, including the right of dissolution and substitution. To hold that either Snow or Bryan could not dissolve and introduce a new partner into the business without the consent of the lessor, would be to deprive Bryan of one of the rights under the lease and agreement held by the original lessees. If the lessor intended that at least one of the original lessees would be held to the covenants of the lease and agreement during their entire duration, he should have so provided in the agreement.

Under a proper construction of the lease and agreement, without the consent of the lessor, Snow and Bryan could dissolve partnership and Bryan could introduce a new partner, who would assume Snow's rights and interests in the lease and agreement, and Snow would be discharged from any future performance of the covenants in the lease and agreement.

The court erred in finding against the contentions of the plaintiffs and in entering a judgment accordingly.

The defendants in error in the cross-bill of exceptions move to dismiss the cross-bill on the ground that the questions presented therein have become moot. The plaintiff in error in the cross-bill concurs in this motion; therefore, the cross-bill of exceptions is dismissed.

*Judgment reversed on the main bill of exceptions, and the cross-bill of exceptions is dismissed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Quillian, J., dissents.*

QUILLIAN, J., dissenting. On August 1, 1945, Charles E. Nash, as lessor, and a corporation by the name of Candlelight, Inc., as lessee, entered into a lease contract whereby Nash leased to the corporation certain property for 5 years, with the privilege of renewing said lease for a number of years. This contract contained express covenants by which the lessee obligated itself to preserve and protect the property and to pay rent at designated intervals. The corporation later surrendered its charter and that contract was at an end. However, J. A. Snipes and William A. Snow, partners, entered into a lease contract with the lessor, Nash, by the terms of which they adopted all of the stipulations and provisions of the original contract between Nash and Candlelight, Inc. The lease contract with Candlelight, Inc., the terms of which where incorporated in the contract with Snipes and Snow, contained a clause prohibiting the assignment of the lease or any interest therein. It reads, that the lessee covenants that it would "Not transfer or assign said lease or any interest therein to anyone without first obtaining the written consent thereto of the lessor."

In the contract between Nash, lessor, and Snipes and Snow, lessees, the following provision was embraced in paragraph 5: "In the event of the dissolution of the partnership between the lessees for any cause whatsoever, it is agreed by the lessor that the conditions of this agreement may be performed by either lessee and the partner withdrawing from the business shall be discharged from any obligation for future performance of the covenants herein. The surviving or partner continuing the business shall have the right to introduce a new partner, who shall have the same rights hereunder as the original lessees."

Ordinarily, a leasehold is property that may be conveyed, and the lease creating it assigned as freely as any other property owned by the lessee. However, such a restriction upon this right as is contained in the portion of the contract first above quoted has the effect of divesting the lessee of that right.

The import of the latter clause above set forth is, first, in the event of a dissolution of the partnership, to preserve the lease

by giving to the partner who remained in charge of the business the right to carry out the covenants of the lease and to enjoy its benefits; second, to require the lessee partner remaining in charge of the business to carry out the express covenants of the contract, which under the lease contract it was the duty of both lessees to perform; third, to give to the lessee partner remaining in the business the right to form a partnership with any person of his choice; fourth, to give to such person all the rights and privileges enjoyed by Snipes and Snow.

Generally, where there is a provision in the lease contract prohibiting the lessee from assigning it, if the lessor later consents, even verbally, to one assignment, he thereby destroys the provision of the contract denying the right of assignment of the lease. The lessee may then assign it, and his assignee may in turn assign to his successors in title, and they may continue with this process ad infinitum. In short, the lessor, by permitting the first assignment of the lease, not only pierces a hole in the wall, but tears down the dyke, and thereafter permits a veritable flood of assignments of the lease. But we do not think that the permission given in the lease contract to the partner continuing the business to form a partnership with a third person, not a party to the contract, and the right of enjoyment of the lease by such person, had that effect, because of the fact that the right to assign the lease in this case was, by its plain terms, limited to the partners who remained in the business, and without giving the provision contained in paragraph 5 a broader construction than it deserves, there is no succession in this case to the right of that lessee to make the one assignment to a partner whom he associates with him. Indeed, the instrument in express terms does not even provide that he may make an assignment to that partner, but simply provides that that partner may enjoy all the rights of the lease.

But, be that as it may, Snow is still by the express terms and plain, unambiguous wording of the very provision contained in paragraph five of the lease between Nash as lessor and Snipes and Snow, as lessees, required to continue to carry out the covenants of the lease which were at first incumbent upon him and Snipes. The words of the contract, "it is agreed by the lessor that the conditions of this agreement may be performed by either lessee," can mean nothing else.

The mere right to assign a lease does not carry with it the relief of the lessee-assignor from the duty of performing the covenants of the lease, in the absence of an appropriate provision to that effect. So, regardless of whether Snow had a right to make an assignment, and whether or not the incoming partner, Bryan, had the right to make further assignments of the lease, the obligation of Snow to carry out its covenants remained of force, unchanged and in no way modified. This is true both because of the fact that the contract provided that he should be bound to carry out the covenants of the lease if he continued the business, and for the further reason that the contract contained no provision relieving him of that duty. The rule of the courts of various jurisdictions is that, there being no expression to the contrary contained in the lease, the lessee remains bound to the covenants of the contract regardless of his right to assign the same, and irrespective of whether he does or does not assign the lease. It is expressed in modern language in 163 A. L. R. 670, headnote 8 (Leonard v. Autocar Sales & Service Co., 392 Ill. 182, 64 N. E. 2d 477), as follows: "A lessee who has expressly covenanted to pay rent is not relieved by an assignment of the lease from liability for rent subsequently accruing, since in such case, although the privity of estate is terminated by the assignment, the privity of contract is unaffected." It is aptly applied and quaintly expressed in the old and well-considered opinion of our Supreme Court in *Garner* v. *Byard,* 23 *Ga.* 289 (68 Am. D. 527), where it was said: "A tenant has the right to assign his lease, but he can not substitute another paymaster in his stead, without the consent and acceptance of the landlord."

Certainly, no direct permission to assign the lease is given by the clause referred to, and I do not think such right is given by implication. If the right to assign the lease is to be implied, and added to the unambiguous wording of the lease by construction, then the cardinal rule of construction should be followed and that construction which will place upon the clause the meaning that the lessor Nash and the lessees, Snipes and Snow, intended it to have when it was entered into. To say that Nash intended to extend to the lessees the right of assigning the lease to utter strangers of their own choosing, regardless of such assignees' solvency or insolvency, responsibility or irresponsibility, would be

to place upon the clause a meaning that could never live in the same household of thought with the provision in the same clause that a partner might retire and the remaining partner carry out the conditions and covenants of the lease.

Again, whatever, rights might be said to be given the incoming Bryan, he was not vested with any authority to relieve Snow of his obligation to carry out the contract.

For the reasons assigned in the foregoing dissent, I cannot agree with the majority of this court in reversing the judgment in this case.