GREENLEE FOUNDRIES, INC., Plaintiff-Appellee, *v.* RICHARD J. KUSSEL *et al.,* Defendants-Appellants.

(No. 58273; )

First District (2nd Division)—July 17, 1973.

David K. Anderson, of Skokie, for appellants.

Finn, Van Mell & Penney, of Chicago, (Norton L. Penney, of counsel,) for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff brought actions against defendants in the circuit court of Cook County to recover damages occasioned by defendants' alleged violations of lease provisions, for whose performance plaintiff was responsible as a guarantor of defendants' obligations under the lease. Defendants filed answers and an affirmative defense of impossibility of performance by reason of commercial frustration. The court below, sitting without a jury, entered a judgment for plaintiff in the amount of $8,048.82, and costs. Defendants appeal.

On March 8, 1962, defendant Casting Masters, Incorporated (hereinafter New Casting Masters) entered into a ten year lease, as lessee, for the use of premises located at 2640 West Wilcox Avenue on Chicago's west side; the owner of the building at that time was Casting Masters, Inc. (hereinafter Old Casting Masters), whose corporate stock was controlled by Richard and Maurice Dunne. Simultaneously with the execution of the lease, plaintiff Greenlee Foundries, Inc. (hereinafter plaintiff) purchased all the stock in New Casting Masters, the lessee, and also executed a written guarantee for the payment of rent and the performance of all the lessee's obligations under the March 8, 1962 lease.

Prior to March 8, 1962, Richard and Maurice Dunne controlled not only the Old Casting Masters stock, but the stock of New Casting Masters as well. The Dunne brothers sold all the stock in the last-mentioned company to plaintiff on March 8, 1962, and stayed on as employees at New Casting Masters beyond the date of sale to plaintiff; they later dissolved Old Casting Masters, distributing its asserts to the company's shareholders.

On January 22, 1965, defendant Kussel (then an employee of plaintiff) purchased from plaintiff all New Casting Masters stock, and, in addition, by written agreement, Kussel personally guaranteed all New Casting Masters' obligations under the March 8, 1962 lease. Simultaneously with the transactions between plaintiff and Kussel, defendant Stephani, by written agreement on January 22, 1965, personally guaranteed the performance of all Kussel's and New Casting Masters' obligations under the subject lease.

New Casting Masters was in the business of casting and molding

metals for industrial use and operated its business on the premises at the West Wilcox Avenue address, an area characterized at the time of the execution of the lease by light-industrial businesses. A riot erupted in the area of the subject property in mid-year, 1966, bringing with it a high degree of tension and the destruction of property. When the rioting began, and immediately thereafter, the company had difficulty with absenteeism in the ranks of its employees, who, at that time, numbered about 16; some night-crew employees refused to work their shifts, and some day-crew workers stayed away as well. By October, 1967, eight or nine of the company's employees had quit work altogether, dropping the number of steady employees to about eight, and the company's production schedule fell off.

In June, 1967, New Casting Masters claimed roughly 25 customers; in October of that year, 19 or so; and in January, 1968, the number had dropped to about 15. The gross sales figures for the company in 1966 were $143,200.26; in 1967, $124,751.55; and in 1968, $66,527.67.

Prior to June, 1967, defendant Kussel commenced construction of a new building on Oakton Street in Elk Grove Township in the suburban area of northwest Cook County. In January, 1968, the company began moving its business from the subject premises to the new location on Oakton Street. The move was completed in mid-year, 1968. Prior to the completion of the move, in April, 1968, intensive rioting occurred in the area of the company's leased premises at the Wilcox Avenue address, brought on in great measure by the assassination of Dr. Martin Luther King, Jr. on April 4 of that year. During the period of rioting in April, 1968, New Casting Masters shut down its operations for four or five days.

The March 8, 1962 lease contained a provision permitting either party to terminate the lease upon 30 days written notice should the premises become wholly untenantable. Without giving notice of termination of the lease under that provision, New Casting Masters abandoned the building, which abandonment was fully accomplished in mid-year, 1968, when the company was operating at full volume in its new premises on Oakton Street in Elk Grove Township. From May, 1968 forward, plaintiff—recognizing its responsibility as guarantor of the defendants' performance under the March, 1962 lease—began making rental payments for the subject premises; New Casting Masters and the individual defendants herein, Kussel and Stephani, failed to make rental payments or provide insurance after April, 1968, and failed to pay the 1967 real estate taxes.

The issues presented for review are these: first, whether the doctrine of commercial frustration is the law of Illinois and applicable to the case at bar; second, whether the judgment of the court below is against

the manifest weight of the evidence presented there; and third, whether the conduct of the trial by defendants' trial counsel was so grossly inadequate as to deny defendants due process of law.

## I.

It is defendants' contention that by reason of the radical changes in the conditions in the area of the subject premises, occasioned by the sudden, unforeseen urban rioting referred to above, defendants were relieved of their obligations under the March 8, 1962 lease by virtue of the doctrine of "commercial frustration," a variant of the contract doctrine of impossibility of performance. Defendants urge that the devastating effects the rioting had upon the general state of affairs and property values on Chicago's west side near the building on Wilcox Avenue were not contemplated when the lease was entered into March 8, 1962. Thus, it became impossible, New Casting Masters claims, to maintain its production schedule, to retain its employees, to meet its customers' delivery requirements, and to draw its customers into the area to do business.

Plaintiff's response to these arguments is threefold: first, that the doctrine of commercial frustration is not applicable to leases of real estate, and further, that the application of the doctrine in cases involving leases is against the public policy of Illinois; second, that regardless whether the doctrine is not applicable to leasehold agreements in Illinois, the facts adduced below in the instant case preclude the doctrine's application here, since there was no showing in the trial court of total or near total destruction of the purposes of the lease agreement, which is required to successfully invoke the doctrine; and, finally, third, that no American cases can be found wherein the doctrine of commercial frustration was invoked successfully on grounds such as those relied upon in the case before this court, to wit: interference with the enjoyment of the demised premises by reason of race riots and racial disturbances.

Relatively few cases in Illinois have discussed the doctrine of commercial frustration, or "frustration of contract," which, historically, grew out of circumstances which had given rise to the contract defense of impossibility of performance. Those circumstances presented themselves traditionally where the subject matter of a contract had been destroyed, or where contract performance had been rendered impossible by reason of the non-existence of one who was to perform, or where the performance envisioned by the parties to the contract had been rendered illegal by a change in law subsequent to the making of the contract.

■■ In *Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, 64 N.E.2d 477, the question was whether the defendant therein was liable under a lease to pay rent during the time that exclusive possession and

temporary use of the demised premises had been taken by the government, under the power of eminent domain, and appropriated to military and war purposes. This State's Supreme Court in *Leonard* made it clear that, with regard to the construction and enforcement of contracts, it is the well established and general rule that where parties, by their own contract and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end. *Leonard*, at page 187; citing *Deibler v. Bernard Bros., Inc.* (1944), 385 Ill. 610, 53 N.E.2d 450; and other cases.

■■ After discussing several exceptions to the enunciated general rule, the *Leonard* court undertook, at pages 187-188, to analyze the commercial frustration doctrine:

> "The doctrine of frustration is an extension of this exception [that the destruction of the person or thing shall excuse the contract performance] to cases where the cessation or nonexistence of some particular condition or state of things has rendered performance impossible and the object of the contract frustrated. It rests on the view that where from the nature of the contract and the surrounding circumstances the parties when entering into the contract must have known that it could not be performed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist. [Citations.]"

The defense of commercial frustration was rejected by the *Leonard* court on two grounds: first, that the contract involved was a contract of lease; and second, that the possession by the government did not extend throughout the remainder of the lease period, precluding, therefore, a total frustration of the lessee's possible enjoyment of the premises. *Leonard*, at pages 191-195.

*Deibler v. Bernard Bros., Inc.*, a 1944 Illinois Supreme Court case cited by the *Leonard* court, involved the lease of an automobile sales building by an automobile dealer in 1940. Subsequent to the making of the lease, the Federal Director of Priorities limited, and, in some respects, prohibited, the manufacture and sale of automobiles generally

throughout the country. The defendant in *Deibler* contended that the only purpose for which the premises could be used, under the lease, was the sale of new automobiles, and that because of the Federal Director's action, the lease had been rendered impossible of performance, which terminated the contract as a matter of law. The court rejected those contentions, stating that defendant could have made lawful use of the premises in any way it saw fit, but chose, instead, to abandon the premises, attempting to make no use thereof. Before holding defendant to the payment of rent under the lease, the court commented at pages 616-617:

> "The general doctrine is well settled that when a party contracts to do a thing without qualification, performance is not excused when, because of inevitable accident or other contingency not foreseen, it becomes impossible for him to do that which he agreed to do.

> Here there is no claim that it was impossible for [defendant] to continue the business, or that any business for which it had the right to use the demised premises had become unlawful. The only claim is that [defendant's] business had been rendered more difficult and, perhaps, less profitable by the restrictions imposed upon that particular business.

> It would certainly be an innovation to establish a rule that all lessees, affected in the same way, were relieved from the obligations of their leases."

In 1956, this court decided *Warshawsky v. American Automotive Products Co.* (1st Dist. 1956), 12 Ill.App.2d 178, 138 N.E.2d 816, and there, again, a commercial frustration defense was interposed and rejected. The theory in *Warshawsky* was based upon a situation complained of by a lessee, *viz.;* that it was illegal for the lessee to occupy the leased premises for the purposes intended, owing to prohibitions in a zoning ordinance, whose existence was unknown to the lessee prior to entry into the lease. In explaining its reluctance to apply the doctrine of frustration of contract, the court said, at page 188:

> "The general rule is that performance of a contract is not excused because subsequent and unanticipated events have deprived it of its value, even though the subsequent event is an act of legislation. [citing *Deibler* and *Leonard.*] The doctrine of commercial frustration is an exception to that rule. That doctrine is not applicable here because the zoning ordinance in question was in existence at the time of the making of the lease.

> In our opinion the question under consideration is more nearly

analagous (sic)' to those cases in which a lease is restricted to a use legal in itself but with respect to which the law requires a license or permit."

Finally, in *Olson v. Carbonara* (1st Dist. 1959), 21 Ill.App.2d 69, 157 N.E.2d 273, heavily relied upon by defendants in the case at bar, this court saw fit to apply the doctrine under discussion. The situation in *Olson* was this: an International labor union, affiliated with the AFL-CIO, granted a charter membership to a local labor group in Chicago. Subsequent to the issuance of the local's charter, the AFL-CIO expelled the International which had issued that charter, prompting the local to disaffiliate itself from the expelled International. A suit was filed based upon a clause in the International's constitution which provided that a member local's assets would revert to the ownership of the International upon a local's disaffiliation. The *Olson* court, in holding that the contract involved had been frustrated by the International's expulsion from the AFL-CIO, found that both the International labor union and the affiliated local must have known, when the contract (charter) between them had been executed, that the contract could not be performed as intended unless the International continued in affiliation with the AFL-CIO.

■■ After a careful reading of the cases mentioned, as well as a reading of numerous other cases and sources to which we referred in our analysis, we find that the doctrine of commercial frustration, while clearly a viable doctrine in this State, is inapposite to the case before us.

In *Lloyd v. Murphy* (Cal. 1944), 153 P.2d 47, California's Supreme Court dealt with the doctrine under scrutiny here in a case involving a lease which had as its sole purpose displaying and selling new automobiles on the leased premises. Subsequent to the execution of the lease in *Lloyd,* the federal government ordered the sale of new automobiles discontinued, and defendant therein contended that the purpose for which the premises were leased had been frustrated by the restrictions promulgated by the government. The *Lloyd* court, in affirming the trial court's decision that war conditions had not terminated defendant's obligations under the lease and requiring defendant to pay the unpaid rent for the premises, said, at page 50:

"The doctrine of frustration has been limited to cases of extreme hardship so that businessmen, who must make their arrangements in advance, can rely with certainty on their contracts. [Citations.] The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed,

for frustration is no defense if it was foreseeable or controllable by the promisor, or if counterperformance remains valuable. [Citations.]"

We find defendants in the case at bar have not met either of the tests set forth in *Lloyd* needed to give rise to the successful interposition of the affirmative defense of commercial frustration. First of all, the purposes for which the lease in question was entered into by defendants were not totally, or nearly totally, frustrated, so as to render performance under the lease terms impossible. On the contrary, it is evident from a reading of the record that defendants continued their business operation, producing the same products, after the onset of what they feel to have been conditions which rendered their performance wholly impossible. The evidence presented to the court below showed, and we do not doubt, that some loss of business was occasioned by the conditions stemming from rioting in the area of the leased premises. But the change in the area was not so severe, so frustrating to defendants in legal terms, as to prompt defendants to retreat from their leasehold responsibilities and obligations and leave plaintiff to account therefor.

Defendants' performance under the lease contract here involved was surely rendered more difficult and less profitable, but certainly not impossible or, for that matter, illegal.

Secondly, defendants here charged themselves with duties as guarantors of the lessee's obligations pursuant to the March 8, 1962 lease, and they were, as reasonable men, in a position at that juncture to foresee the risks attendant to the operation of a business enterprise in an area with which they had gained familiarity over the years.[1] In simple terms, at the moment defendants assumed their duties as guarantors, they knew what they were about, and cannot now be heard to complain.

## II.

■■■ With respect to the second issue presented for review—whether the judgment of the court below is against the manifest weight of the evidence presented there—a court of review ordinarily will not disturb a decision rendered by a lower court, which is in a superior position to determine the credibility of witnesses and accord their testimony its proper weight. Manifest weight has been defined as "that weight which is clearly evident, clear, plain and indisputable." (*Allen v. Yancy* (1st Dist. 1965), 57 Ill.App.2d 50, 55, 206 N.E.2d 452, 454; citing *Hocker v.*

---

[1] It is to be noted the record refers to riots which occurred in Chicago in 1964; that on January 22, 1965, defendant Kussel purchased the stock of New Casting Masters and on the same date, with defendant Stephani, personaly guaranteed all obligations under the lease of March 8, 1962.

*O'Klock* (2nd Dist. 1960), 24 Ill.App.2d 259, 164 N.E.2d 225.) We find, after a thorough review of the record, that the trial court's decision in the case at hand is supported by the evidence, rather than being against its manifest weight.

## III.

■■ Finally, defendants contend that the conduct of the trial below by defendants' trial counsel was so grossly inadequate as to deny defendants due process of law. After a review of the record presented to us, we find that defendants' contention has no factual basis in the record.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.