SAMUEL B. SMITH *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* RICHARD A. ROBERTS, Ex'r of the Estate of Joseph C. Roberts, Deceased, *et al.*, Defendants and Counterplaintiffs-Appellees.

Fourth District    No. 14307

Opinion filed November 30, 1977.

J. H. Weiner and Michael J. Costello, both of Springfield, for appellants.

R. G. Heckenkamp, of Heckenkamp & Fuiten, of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
We have here a lease.

And with it we have the doctrine of commercial frustration.

The trial judge held that the doctrine applied and that the lease was terminated thereby.

He was right. We affirm.

The Smiths and Roberts Brothers entered into a lease agreement for the rental of the first floor and basement of property located in Springfield at 111-113 North Sixth Street. Roberts Brothers was already operating a men's clothing store next to the leased premises and intended to make an opening through their east wall and Smith's west wall in order to establish a department which would be called the Gas Light Room. Thereafter, the main store building of Roberts Brothers was completely destroyed by fire. Questions concerning the rights and liabilities of the parties under the lease were raised as a result of that conflagration and those questions then ripened into litigation.

After Roberts Brothers failed to reoccupy the leased premises—which suffered only smoke damage—the Smiths filed suit for breach of the lease. Roberts Brothers then counterclaimed for damages against the Smiths alleging that the Smiths had caused delay in the reconstruction of Roberts Brothers' premises and asked for a determination that the lease was terminated. The trial court found that the lease had been terminated because the destruction of Roberts Brothers' main store excused performance on its part. The court also held that the tenant (Roberts Brothers) was not damaged by the landlords (Smiths) during the construction of the tenant's new building since Roberts Brothers had not complied with statutory notice requirements and, furthermore, that Roberts Brothers had not adequately proved the costs incurred in shoring up and reinforcing the Smith wall.

We concur with the trial judge and affirm.

In their complaint, the Smiths alleged that the clothing store had violated its obligations under the lease and that the leased premises had been restored and repaired according to provisions of the lease. Roberts Brothers' defense to the complaint was two-fold: (1) the lease had been terminated because of the "doctrine of commercial frustration"; and (2) the lease had been terminated because of the "doctrine of constructive eviction." We need only consider the first defense since it is dispositive of the question.

■■ At issue is the doctrine of *commercial frustration*:

"The doctrine of frustration is an extension of this exception to cases where the cessation or nonexistence of some particular condition or state of things has rendered performance impossible and the object of the contract frustrated. It rests on the view that where from the nature of the contract and the surrounding circumstances the parties when entering into the contract must

have known that it could not be performed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist." *Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, 187-88, 64 N.E.2d 477, 479-80, *cert. denied* (1946), 327 U.S. 804, 90 L. Ed. 1029, 66 S. Ct. 968.

The doctrine of commercial frustration is not to be applied liberally. (*Greenlee Foundries, Inc. v. Kussel* (1973), 13 Ill. App. 3d 611, 301 N.E.2d 106.) However, the defense of commercial frustration is a viable doctrine in Illinois and will be applied when the defendant has satisfied two rigorous tests: (1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance by the lessee had been totally or near totally destroyed by the frustrating cause. *Greenlee*, citing *Lloyd v. Murphy* (1944), 25 Cal. 2d 48, 153 P.2d 47.

■■ The factual circumstances here satisfy these stringent tests. First, although it might be foreseeable that the main Roberts Brothers' store would be destroyed and the leased premises would remain intact, it is a remote contingency to provide for in a lease. The parties were, in fact, diligent enough to put a catastrophe clause in the lease concerning destruction of the *leased* premises. We find that their failure to include such a clause as to Roberts Brothers' main store was not due to a lack of diligence since such a contingency was not reasonably foreseeable.

■■ The second horn of the two-prong test is also satisfied—the value of the Smith counterperformance was totally—or nearly totally—destroyed. Although it would be physically possible to operate the leased premises as a separate entity, testimony revealed that operations would have to be changed drastically in order to make the premises self-sufficient. Furthermore, the record clearly demonstrates that the leased premises were never intended to be autonomous. Therefore, the trial court's finding that the existence of the main store was an implied condition of the contract between the parties and that its destruction frustrated the lease is an accurate interpretation of the lease. The court's finding results in the fairest disposition of the parties' respective interests.

■■ In addition to its defenses to the Smith complaint, Roberts Brothers counterclaimed against the Smiths for costs incurred while underpinning the Smith building in order that Roberts Brothers could reconstruct their demolished building. The trial court found that all three

of the notices that were sent by Roberts Brothers requesting permission to inspect Smith's property were defective under the protection-of-adjacent-landowner's act (Ill. Rev. Stat. 1975, ch. 17½, par. 51). We agree that the first two notices were clearly defective and their effectiveness was vitiated. The failure of the notices to specify the depth of the excavation renders it impossible for an adjoining landowner to determine whether he or the excavating landowner has the duty to shore up the property as it is the depth of the excavation which is determinative of whether subsection 1 or subsection 5 of the act will apply. (Ill. Rev. Stat. 1975, ch. 17½, par. 51(1), (5).) If the excavation is of a depth of not more than the standard depth of foundations (8 feet), subsection 1 of the act will apply and the adjoining landowner, if given proper notice, will have no less than 30 days to shore up his own property. If, on the other hand, the excavation is intended to be deeper than the standard depth, subsection 5 will apply and the excavating landowner, if given necessary license, shall enter the adjoining landowner's property and take the necessary precautions in order to protect the adjacent landowner's premises. Therefore, it is imperative that the notice provisions of the act be complied with, indicating the depth of the excavation and when it is intended to be made. Ill. Rev. Stat. 1975, ch. 17½, par. 51(1).

Contrary to the trial court's finding, the third notice was not defective for failure to give the Smiths 30 days in which to protect their own property. This notice does impart the required statutory language and specifies the depth of the contemplated excavation. But—since the specified depth (12 feet) is deeper than the standard excavation (8 feet), the excavation comes within the scope of subsection 5. Therefore, the 30-day notice provision for standard depth excavations under subsection 1 is not pertinent and the applicable part of the statute is subsection 5 which makes no mention of a 30-day waiting period.

The fact that the third notice was valid, however, does not necessarily merit a recovery for Roberts Brothers. At trial, the clothing establishment contended that the delay in their excavation because of the Smiths' refusal to grant the necessary license to come upon their property resulted in increased costs for material and labor. However, the third notice was given on January 23, 1976, and the injunctions permitting the inspection of the Smith property was obtained on January 28, 1976. Therefore, any additional costs incurred because of the refusal to allow Roberts Brothers' excavators to enter the Smith property was *de minimis*.

But, Roberts Brothers contends that refusal to grant the necessary license to enter the premises entitles it to recover costs incurred in underpinning Smith's property. As authority, Roberts Brothers cites the protection-of-adjacent-landowner's act (Ill. Rev. Stat. 1975, ch. 17½, par. 51(5)) and the National Building Code which has been adopted by the

City of Springfield (Springfield, Ill., Code §10.1 (1968)). The statute must be examined first, but it is silent as to which party should pay the costs of providing lateral support to an excavation of below standard depth when the adjoining landowner refuses to allow the excavator to come upon his premises. The National Building Code, however, states as section 904.2:

"When an excavation extends more than 10 feet below curb level nearest the point of excavation under consideration, or below the surface of the ground where there is no such curb level, the person causing such excavation to be made shall, if afforded the necessary consent to enter upon the adjoining land, at his own expense, preserve and protect from injury every building or structure, the safety of which may be affected by such excavation and, when necessary, shall underpin and support the same by proper foundations, irrespective of the depth to which the foundations of such buildings or structure may extend. If the necessary consent is not accorded to the person making the excavation, then it shall be the duty of the person refusing such consent to preserve and protect such building or structure from injury and, when necessary, to underpin and support the same by proper foundations; and for that purpose such person shall, when necessary, be permitted to enter upon the premises where such excavation is being made."

At first glance, this section of the Code lends support to Roberts Brothers' argument, but a further examination reveals that the duty imposed by the National Building Code is equivalent to that at common law and does not alter the rule as to which party should pay the costs when the adjacent landowner refuses entrance to the excavating owner. At common law, an excavating owner had a right—at his own expense and cost—to go upon adjoining property for the purpose of shoring a building to protect it from damage. (*Korogodsky v. Chimberoff* (1930), 256 Ill. App. 255.) In *Korogodsky* the appellate court refused to allow the plaintiff costs for shoring up defendant's property, stating:

"If the owner of adjacent improved property does not see fit to protect himself and injury is sustained by him by reason of an excavation which is done with all reasonable care and skill, then he cannot recover, but the other person has no right to compel him to shore his own property." 256 Ill. App. 255, 258.

The court also went on and quoted from the California case of *First National Bank v. Villegra* (1891), 92 Cal. 96, for the proposition that an excavator has a right to go upon the premises of the adjacent landowner for the purpose of shoring his building in order to protect his own property, but this will be done at his own expense and cost. In other words, the court said that although refusal to allow entrance will enable

the excavator to relieve himself from liability, it will not create a liability in favor of himself upon the adjacent landowner. The National Building Code merely restates this common law doctrine. The only Illinois case we have discovered which awarded costs to an excavator in a comparable situation is *Exchange National Bank v. Code* (1959), 23 Ill. App. 2d 382, 163 N.E.2d 554. But we find that case to be distinguishable on its facts and not persuasive precedent.

To recapitulate, neither the protection of adjacent landowner's act nor the National Building Code expressly state who should pay the costs in this type of situation. In one of the few reported decisions interpreting the act, it was stated:

> " 'A statute will be construed as changing the common law only to the extent the terms thereof warrant, or as necessarily implied from what is expressed. [Citation.] It will not be presumed that an innovation was intended beyond what is specifically or clearly implied.' " *Proud v. W. S. Bills & Sons, Inc.* (1970), 119 Ill. App. 2d 33, 45, 255 N.E. 64, 70, citing *Cedar Park Cemetery Assn. v. Cooper* (1951), 408 Ill. 79, 96 N.E.2d 482.

■■■ In the absence of a clear statutory expression the common law should be consulted. (*Proud.*) Therefore, applying the common law to the facts at hand we find that the Smiths' refusal to allow Roberts Brothers' excavators to inspect their premises relieved the clothing firm from its duty to underpin the Smith property. Consequently, Roberts Brothers would not have been liable if their excavation had caused damage to the Smith premises. However, once Roberts Brothers went onto the Smith property and provided support in order to protect its *own* building and guarantee its *own* workers' safety, it reassumed responsibilities and became a volunteer. Thus, although refusal to allow entrance enabled Roberts Brothers to relieve itself from liability as to damage to the Smith premises, it will not create a liability in favor of Roberts Brothers upon the Smiths and Roberts Brothers is not entitled to be reimbursed for their expenses.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.