WILLIAM MASTRO, Plaintiff-Appellant, v. THE DEPARTMENT OF
REVENUE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—94—1813

Opinion filed June 14, 1996.

William J. Harte, Ltd., of Chicago (William J. Harte and Joan M. Mannix, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Cacilia Reich Masover, Assistant Attorney General, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiff, William Mastro, from the judge's denial of his complaint for administrative review of the Illinois Gaming Board's decision to deny his application for an occupational license under the Illinois Riverboat Gambling Act (230 ILCS 10/1 *et seq.* (West 1992)) (Gambling Act).

■ The Gambling Act provides in relevant part:

"(a) The Board may issue an occupational license to an applicant *** upon a determination by the Board that the applicant is eligible for an occupational license ***. To be eligible for an occupational license, an applicant must:

***

(2) not have been convicted of a felony offense, a violation of Article 28 of the Criminal Code of 1961, or a similar statute of any other jurisdiction, or a crime involving dishonesty or moral turpitude.

* * *

(d) The Board may in its discretion refuse an occupational license to any person: (1) who is unqualified to perform the duties required of such applicant; (2) who fails to disclose or states falsely any information called for in the application; (3) who has been found guilty of a violation of this Act or whose prior gambling related license or application therefor has been suspended, restricted, revoked or denied for just cause in any other state; or (4) for any other just cause." 230 ILCS 10/9 (West·1992).

In 1991, the plaintiff submitted an application to the defendant Illinois Gaming Board (Board) for a license to work as a dealer at the Alton Belle Riverboat Casino. On his application, the plaintiff disclosed that he had been convicted of shoplifting in New Jersey.

In a letter dated February 21, 1992, the Board informed the plaintiff that it was denying his application because his shoplifting conviction in New Jersey made him ineligible for a license. The plaintiff made a timely request for a hearing on the denial of his application. In this proceeding, the parties brought cross-motions for

summary judgment. The administrative law judge (ALJ) denied the plaintiff's motion, but she granted the Board's motion.

In her recommended decision, the ALJ made the following findings of fact. The plaintiff had been continually licensed as a dealer in New Jersey since 1979. In 1989, the plaintiff pleaded not guilty to a charge that he shoplifted by leaving a Sears Roebuck store without paying for an incoming call display unit valued at $79.99. The New Jersey shoplifting statute under which he was charged provided:

"(b) Shoplifting. Shoplifting shall consist of any one or more of the following acts:

(1) For any person purposely to take possession of, carry away, transfer or cause to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise or converting the same to the use of such person without paying to the merchant the full retail value thereof.

\* \* \*

(c) Gradation. Any person found guilty of an offense under subsection b. is a disorderly person \*\*\*." N.J. Stat. Ann. § 2C:20—11 (West 1995).

A New Jersey judge convicted the plaintiff under this statute. Pursuant to the judge's sentence, the plaintiff paid $205 in fines and costs and attended a seminar on shoplifting. The plaintiff had no other convictions.

Under New Jersey law, disorderly persons offenses, such as shoplifting, are not crimes and do not legally disadvantage the offender:

"Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of [New Jersey]. There shall be no right to indictment by a grand jury nor any right to a trial by jury on such offenses. Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime." N.J. Stat. Ann. § 2C:1—4(b) (West 1995).

Consequently, the plaintiff's New Jersey dealer's license was not affected by his shoplifting conviction.

The ALJ further found that the Illinois retail theft statute described the same acts as the New Jersey shoplifting statute. The Illinois statute provided:

"A person commits the offense of retail theft when he or she knowingly:

(a) Takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held,

stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." Ill. Rev. Stat. 1989, ch. 38, par. 16A—3.

In Illinois, retail theft is a misdemeanor. Ill. Rev. Stat. 1989, ch. 38, par. 16A—10.

Based on the plaintiff's shoplifting conviction, the ALJ concluded that the plaintiff was ineligible for a license under section 9(a)(2) of the Gambling Act. She rejected the defendant's argument that section 9(a)(2) did not apply to him because, under New Jersey law, he did not commit a "crime." The ALJ decided that Illinois law must control in determining whether the plaintiff was eligible for a license in Illinois. Under Illinois law, the defendant's offense was a crime involving dishonesty. The fact that he did not have the opportunity for a jury trial in New Jersey was irrelevant because the only issue before the ALJ was whether the Gambling Act applied. She concluded that the denial of the plaintiff's license was not unduly harsh or arbitrary because the denial involved no discretionary act by the Board but was instead mandated by section 9(a)(2).

The Gaming Board adopted the ALJ's findings of fact and conclusions of law and denied the plaintiff's application for a dealer's license. Thereafter, the plaintiff filed a complaint in the circuit court of Cook County for administrative review of the Board's decision.

The judge affirmed the Board's decision to deny the plaintiff's application. In announcing his decision, the judge stated that the plaintiff's shoplifting offense was "not treated in the State of New Jersey as a criminal offense as we know it in the State of Illinois. *** So, insofar as this Court is concerned, so far as the State of New Jersey is concerned, this was not and is not a crime." He concluded: "Clearly, this gentleman ***, at least within the State of Illinois, would have been deemed to have been convicted of the crime of theft, albeit a misdemeanor of the lowest class." The judge, therefore, decided that the ALJ's decision, which the Board adopted, was not against the manifest weight of the evidence.

■ The plaintiff first argues that the trial court correctly found that he had not been convicted of a "crime" but erred in concluding that his disorderly persons offense was a proper basis for finding him ineligible for a license under the Gambling Act. As a preliminary matter, we disagree with the plaintiff's assertion that the judge found that he had not been convicted of a crime. As a whole, the judge's statements indicate that he found that, although the plaintiff had not been convicted of a crime *under New Jersey law,* his offense was a crime *under Illinois law.*

The question remains whether the fact that shoplifting is not a crime in New Jersey precluded the Board from deciding that it was a "crime involving dishonesty or moral turpitude" under section 9(a)(2) of the Gambling Act. We begin with a discussion of our standard of review. On review, an administrative agency's findings of fact are deemed *prima facie* correct and will not be disturbed unless they are contrary to the manifest weight of the evidence. *Soho Club, Inc. v. Department of Revenue*, 269 Ill. App. 3d 220, 645 N.E.2d 1060 (1995). A reviewing court, however, does not give the same deference to questions of law, such as statutory interpretation, and the court will reverse an agency's legal determination if it is unreasonable or erroneous. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 620 N.E.2d 1070 (1993); *Press v. Code Enforcement Board of Appeals*, 149 Ill. 2d 281, 595 N.E.2d 1068 (1992).

In this case, the question is one of statutory interpretation; that is, was the plaintiff's conviction for shoplifting in New Jersey a "crime involving dishonesty or moral turpitude" under the Illinois Gambling Act? The fundamental rule in statutory construction is to give effect to the intent of the legislature. *State v. Mikusch*, 138 Ill. 2d 242, 562 N.E.2d 168 (1990). To determine legislative intent, a court should first look to the language of the statute as the best evidence of this intent and should give the language of the statute its plain and ordinary meaning. *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 563 N.E.2d 465 (1990).

■ The Gambling Act itself states the purpose of the Act in a section entitled "Legislative Intent":

> "While authorization of riverboat gambling will enhance investment, development and tourism in Illinois, it is recognized that it will do so successfully only if the public confidence and trust in the credibility and integrity of the gambling operations and the regulatory process is maintained. Therefore, regulatory provisions of this Act are designed to strictly regulate the facilities, persons, associations and practices related to gambling operations pursuant to the police powers of the State, including comprehensive law enforcement supervision." 230 ILCS 10/2(b) (West 1992).

Given that this language indicates an intent to strictly regulate individuals involved in gambling operations to preserve the integrity and credibility of gambling operations, we do not think the legislature intended for an applicant to be eligible for a gambling license if that applicant had a conviction for conduct that would be "a crime involving dishonesty or moral turpitude" under Illinois law. To allow an applicant who has such a conviction to be eligible for a license

because the applicant's offense is not considered a crime under the law of another state would be contrary to the legislature's intent to strictly regulate gambling operations in Illinois. See *Alexander v. Director, Department of Agriculture*, 111 Ill. App. 3d 927, 444 N.E.2d 811 (1983) (the State's predominant purpose in licensing trades and professions is to protect the public by assuring that these occupations will be practiced with honesty and integrity).

Moreover, the manner in which Illinois courts have interpreted the terms "crime involving dishonesty or moral turpitude" shows that the plaintiff's shoplifting offense falls within that language in the Gambling Act. As the ALJ found, the Illinois retail theft statute is essentially the same as the New Jersey shoplifting statute, and, therefore, under Illinois law, the plaintiff's offense would have been considered retail theft. See 720 ILCS 5/16A—3 (West 1992).

Although shoplifting is not a crime in New Jersey, in Illinois, retail theft of property of less than $150 is a Class A misdemeanor, which is considered a "crime" in Illinois (*People v. Harter*, 86 Ill. App. 2d 461, 230 N.E.2d 15 (1967)). Not only is retail theft considered a crime in Illinois, but also, in the context of cases involving impeachment of witnesses by prior conviction, courts have held that theft is a "crime involving dishonesty" in Illinois. *People v. Malone*, 78 Ill. 2d 34, 397 N.E.2d 1377 (1979); *People v. Spates*, 77 Ill. 2d 193, 395 N.E.2d 563 (1979); *People v. Walker*, 157 Ill. App. 3d 133, 510 N.E.2d 29 (1987); *cf. Smith v. Roberts*, 54 Ill. App. 3d 910, 916, 370 N.E.2d 271 (1977) ("In the absence of a clear statutory expression, the common law should be consulted"); *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 326 N.E.2d 74 (1975) (words and phrases with well-established common law meanings are given those same meanings in statutes concerning the same or similar subject matter).

In addition, we are persuaded by the cases the defendant cites in support of its argument that we should look to Illinois law to determine whether the plaintiff's offense was a crime involving dishonesty for purposes of the Gambling Act. In *Rigney v. Edgar*, 135 Ill. App. 3d 893, 482 N.E.2d 367 (1985), this court held that a defendant's plea of *nolo contendere* in Georgia was a conviction for purposes of Illinois law. While in Georgia, the defendant had pleaded *nolo contendere* to a DUI charge. Under Georgia law, this plea was not considered a conviction and would not have resulted in the suspension of the defendant's license. On the basis of the defendant's plea in Georgia, however, the Illinois Secretary of State suspended his driver's license under an Illinois law that permitted him to suspend a license on the basis of a conviction " 'in another State which if committed within this State would be grounds for suspen-

sion or revocation.' " *Rigney*, 135 Ill. App. 3d at 896, quoting Ill. Rev. Stat. 1981, ch. 95$^{1}$/$_{2}$, par. 6—206(a)(6).

The *Rigney* court rejected the defendant's argument that the Secretary of State should not have suspended his license because, under Georgia law, his plea of *nolo contendere* was not a conviction and could not be used against him for any civil disqualification. *Rigney*, 135 Ill. App. 3d at 897. The court decided that the defendant's plea was a conviction for purposes of the Driver License Compact, in which the Illinois legislature had expressed an intent to discipline Illinois drivers for out-of-state conduct:

> " 'The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported *** as it would if such conduct had occurred in the home state, in the case of convictions.' " *Rigney*, 135 Ill. App. 3d at 897, quoting Ill. Rev. Stat. 1981, ch. 95$^{1}$/$_{2}$, par. 6—703(a)(2).

In addition, the court stated that the effect of the plea in Georgia would not transfer to Illinois because Georgia did not regulate Illinois drivers. *Rigney*, 135 Ill. App. 3d at 898. See also *Schultz v. Edgar*, 170 Ill. App. 3d 36, 39, 523 N.E.2d 1289 (1988) ("The Illinois legislature has entrusted [the Secretary of State] with exclusive authority to regulate the issuance or denial of Illinois driver's licenses, and it would be contrary to public policy in Illinois to require defendant to apply a more lenient Wisconsin statute to plaintiff's offenses").

Although we recognize that, unlike the Driver License Compact (Ill. Rev. Stat. 1981, ch. 95$^{1}$/$_{2}$, par. 6—703(a)(2)), the Gambling Act does not contain a provision specifically authorizing Illinois to treat out-of-state conduct as if it had occurred in Illinois, we believe the reasoning of *Rigney* applies to this case. As in *Rigney*, the plaintiff urges this court to treat his offense as it would have been treated by another state. In New Jersey, as in Georgia, the consequences of certain offenses are less than they are in Illinois. As the court noted in *Rigney*, however, Illinois, not another state, regulates individuals licensed in Illinois. Under *Rigney*, therefore, we will not look to New Jersey law to determine the plaintiff's eligibility under the Gambling Act. Illinois law governs whether he should be licensed under this Illinois statute.

We also reject the plaintiff's argument that it was error for the judge to equate his shoplifting conviction in New Jersey with a conviction for retail theft in Illinois because he was not entitled to the same procedural safeguards in New Jersey to which he would have been entitled in Illinois. He asserts that individuals charged

with disorderly persons offenses in New Jersey are not entitled to a jury trial (see N.J. Rev. Stat. § 2C:1—4(b) (1995)), whereas Illinois law entitles those charged with misdemeanors, such as retail theft, to a jury trial (see *People v. Villareal*, 114 Ill. App. 3d 389, 449 N.E.2d 198 (1983)).

In determining whether the plaintiff's shoplifting conviction in New Jersey makes him ineligible for a license under the Gambling Act, however, we need only decide whether the Board's decision that this was a "crime" within the meaning of that Act was unreasonable or erroneous. We do not think it was unreasonable or erroneous for the Board to conclude that section 9(a)(2) applied to the plaintiff's New Jersey shoplifting conviction despite differences in the criminal procedure and penalties in New Jersey and Illinois. Although it is contrary to Illinois criminal law to convict an individual of a misdemeanor without the opportunity for a jury trial, this did not preclude the Board, in interpreting a civil statute, from considering such a conviction, especially given the legislature's aim to strictly regulate gambling operations in Illinois.

The plaintiff next argues that the judge erred in using section 9(d) as basis for upholding the Board's decision. The plaintiff's contention stems from the fact that, in announcing his decision to affirm the Board, the judge did not cite section 9(a), the eligibility provision, but instead read section 9(d), which provides that the Board may, in its discretion, deny a license for any just cause (230 ILCS 10/9(d) (West 1992)). According to the plaintiff, the Board made no discretionary determination to deny the plaintiff's application under section 9(d). Instead, the Board concluded that it had no discretion to grant or deny the plaintiff's application because section 9(a) made him ineligible for a license. Consequently, the plaintiff asserts that the judge improperly exercised the Board's discretion by deciding denial of the plaintiff's application was proper under section 9(d). Given our conclusion that the judge properly upheld the Board's decision under section 9(a), however, we need not consider the plaintiff's argument that another basis for upholding that decision was improper. See *Home Indemnity Co. v. General Accident Insurance Co.*, 213 Ill. App. 3d 319, 572 N.E.2d 962 (1991) (a reviewing court may uphold the dismissal of a complaint on any basis in the record).

■ Finally, the plaintiff argues that the judge erred in upholding the Board's denial of his license application because this denial was unduly harsh and arbitrary. In support of his argument, the plaintiff cites *Graham v. Illinois Racing Board*, 145 Ill. App. 3d 383, 495 N.E.2d 1013 (1986). In *Graham*, the court decided that the Racing Board's decision to suspend the occupational license of a trainer for

life was overly harsh. The court remanded the case to the Board to determine an appropriate lesser term of suspension.

*Graham*, however, is distinguishable from this case. In *Graham*, the Racing Board imposed a lifetime suspension of the trainer's license under a statute that provided: "The Board may suspend or revoke any occupation license" (Ill. Rev. Stat. 1985, ch. 8, par. 37—15). The word "may" in the statute indicates that the Board's decision was discretionary rather than mandatory. See *In re Marriage of Freeman*, 106 Ill. 2d 290, 478 N.E.2d 326 (1985). As the ALJ recognized in the case before us, however, the Gaming Board's decision to deny the plaintiff's application was not discretionary. Rather, its denial of the plaintiff's license was mandated by the legislature through section 9(a) of the Gambling Act. Despite what might be considered a harsh result of the Board's decision, we cannot conclude that the judge erred in upholding the denial of the plaintiff's application.

Judgment affirmed.

ZWICK, P.J., and McNAMARA, J., concur.